In the United States District Court
for the Southern District of Georgia
Brunswick Division

FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.
2007 OCT -1 P 2: 29
CLERK
SO. DIST. OF GA.

DOUGLAS ASPHALT COMPANY, JOEL :    CIVIL ACTION
H. SPIVEY, and KYLE SPIVEY,

    Plaintiffs,

v.

QORE, INC.; APPLIED TECHNICAL
SERVICES, INC.; GEORGENE M.
GEARY; GLENN DURRENCE; GUOHUA
"GEORGE" LIAN; PAUL V.
MULLINS; GREG MAYO; LARRY
MATTHEWS; HAROLD LINNENKOHL;
and RICK DOUDS,

    Defendants.     NO. CV206-229

## O R D E R

On August 7, 2007, the Court issued an order on Defendants' motions to dismiss and motion for judgment on the pleadings. The Court determined that Plaintiffs' equal protection claims against the individual Defendants, all current or former Georgia Department of Transportation officials (referred to collectively as the "GDOT officials" or the "GDOT Defendants"), stated a claim upon which relief could be granted.

AO 72A
(Rev. 8/82)

On August 22, 2007, the GDOT officials filed a notice of appeal, which states in part that the Court refused to consider their qualified immunity defense. Although the Court considered and rejected this argument, the Court failed to address this argument in the order.

The following opinion will serve to clarify that the Court is not persuaded by the GDOT officials' qualified immunity defense, and will give particular attention to a decision issued by the Eleventh Circuit Court of Appeals after the Court's order denying the GDOT officials' motion for judgment on the pleadings in part, <u>Griffin Indus., Inc. v. Irvin</u>, No. 06-12370, 2007 WL 2363343 (11th Cir. Aug. 21, 2007).

A full statement of the facts involved in this action is set out in the Court's order entered on August 7, 2007.

## **DISCUSSION**

A state official, sued in his individual capacity, may assert the defense of qualified immunity for actions taken within the scope of his official responsibilities. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 815 (1982). To overcome a qualified immunity defense, a plaintiff must first

2

demonstrate that the defendant violated a constitutional right, and second, that the violation was clearly established as unlawful at the time the act occurred. Hope v. Pelzer, 536 U.S. 730, 736-39 (2002).

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, [] but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

Anderson v. Creighton, 483 U.S. 635, 640 (1987)(citation omitted).

The defense of qualified immunity applies unless the state of the law gave the official "fair warning" that his conduct was unconstitutional. Hope, 536 U.S. at 741. The Eleventh Circuit identified three situations where the unlawfulness of an official's conduct is deemed clearly established: (1) where particular words in a statute or the constitution make the law applicable to the challenged conduct; (2) where it is plain that judicial decisions apply to a broad range of factual circumstances; and (3) where past court decisions involved materially similar facts. Vinyard v. Wilson, 311 F.3d 1340, 1350-51 (11th Cir. 2002).

AO 72A
(Rev. 8/82)

Therefore, when a preexisting constitutional rule applies with "obvious clarity" to the conduct in question, the law need not be clearly established by a previous factually-indistinguishable case. Id. at 1352.

The legislative enactments and court opinions, as set forth by the federal constitution, federal statutes, the U.S. Supreme Court, the Eleventh Circuit Court of Appeals, and the Georgia Supreme Court, are relevant to determining what law was clearly established in the context of this case. Marsh v. Butler County, 268 F.3d 1014, 1032 n.10 (11th Cir. 2001)(en banc).

According to Plaintiffs' complaint, the GDOT officials' actions were acts taken within the scope of their official responsibilities. Allegedly, the GDOT officials placed Plaintiffs in default even though these Defendants knew that the testing procedures were invalid and unprecedented. Moreover, Lian supposedly continued the atomic absorption testing even though he knew the test was faulty and inaccurate. Plaintiffs also aver that Mayo failed to notify Douglas Asphalt of its winning bid on the I-95 re-pave project.

4

Plaintiffs' equal protection claim is out of the ordinary. Douglas Asphalt and the Spiveys do not assert that they are members of a class that has traditionally been afforded protection by the Fourteenth Amendment because of historical opprobrium suffered by the group in American society. Instead, Plaintiffs assert that the government singled them out for unfair and discriminatory treatment. Only one Supreme Court case has discussed a "class of one" equal protection claim explicitly, Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)(per curiam). However, previous Supreme Court decisions have recognized such a claim implicitly.

In Sioux City Bridge Co. v. Dakota County, the Supreme Court recognized an equal protection claim where the state "intentionally and arbitrarily assessed the Bridge Company's property at 100 per cent. of its true value and all the other real estate and its improvements in the county at 55 per cent." 260 U.S. 441, 445 (1923). In Allegheny Pittsburgh Coal Co. v. County Commission of Webster County, the Court found that the equal protection clause could have been violated where the Coal Company's property had "been assessed at roughly 8 to 35 times more than comparable neighboring

AO 72A
(Rev. 8/82)

property, and these discrepancies . . . continued for more than 10 years with little change." 488 U.S. 336, 344 (1989). Neither the Bridge Company nor the Coal Company alleged that it was a member of a discrete and insular minority.

In Olech, the plaintiff asked municipal authorities to connect her property to the village water supply, and the officials agreed to do so, on the condition that she grant the Village a thirty-three foot easement on her property in return. Id. at 563. Olech balked at this requirement, inasmuch as her neighbors only had to provide fifteen foot easements in exchange for their connections. Even though the Village relented and granted Olech a municipal water hookup on the same terms as her neighbors received, Olech sued on equal protection grounds. The Supreme Court found that "class of one" claims could be brought under the Fourteen Amendment, and that Olech stated a claim entitling her to relief. Id. at 564-65.

The Eleventh Circuit's decision in Griffin Industries, which involved an identical claim in somewhat similar circumstances, warrants thorough consideration if the Court is to maintain its view that the GDOT Defendants are not shielded from liability by the defense of qualified immunity.

AO 72A
(Rev. 8/82)

In <u>Griffin Industries</u>, the Court of Appeals was presented with an "unusual civil rights case[,]" wherein it had to decide whether state officials could be held liable for equal protection violations for taking regulatory actions against a chicken rendering plant in East Dublin, Georgia. 2007 WL 2363343 at *1. The appellate court found that the state defendants were entitled to qualified immunity and reversed the trial court's order denying the defendants' motion to dismiss. <u>Id.</u>

In the late 1990s, the Griffin facility was doing more chicken-rendering business, and more people lived in close proximity to the plant than in previous years. As a result, there were an increased number of odor complaints about the facility from local residents. <u>Id.</u> at *2-*3. According to Griffin, regulators at the Georgia Environmental Protection Division issued Griffin a permit with odor control provisions that were more restrictive than those placed on other chicken processing plants in the state. <u>Id.</u> at *4. Griffin alleged that state and local political actors conspired in a multitude of ways to harass it and put it out of business. <u>Id.</u> at *5-*14.

The Griffin Industries court began its legal analysis by recognizing that it was confronted with an atypical, "class of one" equal protection case, rather than a more common, and hence more doctrinally developed, race or sex-based discrimination cause of action. Id. at *21. After discussing Olech, the court considered whether Griffin had averred that the defendants had intentionally treated it differently than others who were similarly situated, and if so, whether Griffin alleged that there was no rational basis for the different treatment. Id. at *27-*28.

Griffin's complaint alleged that it had been treated differently than a competitor, American Proteins. The Eleventh Circuit thought it was crucial to determine what degree of similarity was required for two entities to be similarly situated. Id. at *28. Specifically, Circuit Judge Marcus explained that Olech's position was indistinguishable from that of her neighbors, much like the situations presented in Sioux City Bridge Co., 260 U.S. at 445, and Allegheny Pittsburgh Coal Co., 488 U.S. at 344.

Even though there were distinguishing facts regarding the properties, and their characteristics for tax assessment purposes, present in Sioux City Bridge Co. and Allegheny

8

Pittsburgh Coal Co. that might lead one to conclude that the "similarly situated" requirement should not be applied too charily, the Griffin Industries panel concluded that equal protection claims were cognizable in those cases because the similarly situated requirement could be analyzed "succinctly and at a high order of abstraction." 2007 WL 2363343 at *29-*30. "[T]he challenged governmental decisions . . . involved a single answer to a single question." Id.

In the case before it, though, the court could not find such a clear or straightforward governmental decision being challenged:

> Here, by contrast, the government's regulatory action was undeniably multi-dimensional, involving varied decision making criteria applied in a series of discretionary decisions made over an extended period of time. . . . Accordingly, when dissimilar governmental treatment is not the product of a one-dimensional decision -- such as a standard easement or a tax assessed at a pre-set percentage of market value -- the "similarly situated" requirement will be more difficult to establish.

Id. at *30-*31; see also Campbell v. Rainbow City, 434 F.3d 1306, 1314-16 (11th Cir. 2006).

Judge Marcus noted that this approach was consistent with the law applied in employment discrimination claims brought under the equal protection clause, but outside the

9

"class of one" context. Knight v. Baptist Hosp. of Miami, Inc., 330 F.3d 1313, 1316-19 (11th Cir. 2003)(white coworker with better job performance and without a record of tardiness is not a fair comparator).

Consequently, where a complex, multi-faceted governmental decision-making process is challenged, proposed similarly situated entities "must be very similar indeed." Griffin Indus., Inc., 2007 WL 2363343 at *35. The Griffin Industries court explained that "[a] 'class of one' plaintiff might fail to state a claim by omitting key factual details in alleging that it is 'similarly situated' to another." Id. (citing GJR Invs., Inc. v. County of Escambia, 132 F.3d 1359, 1367-68 (11th Cir. 1998)).

> "The reason that there is a 'similarly situated' requirement in the first place is that at their heart, equal protection claims, even 'class of one' claims, are basically claims of discrimination." . . . To maintain this focus on discrimination, and to avoid constitutionalizing every state regulatory dispute, we are obliged to apply the "similarly situated" requirement with rigor. "Different treatment of dissimilarly situated persons does not violate the equal protection clause."

Id. at *42 (internally quoted sources omitted).

After careful consideration, the Court finds that Douglas Asphalt's case is distinguishable from the facts

presented in Griffin Industries. Importantly, Douglas Asphalt alleged that the testing procedures used by the GDOT Defendants had never been used against any other road contractor, either by the GDOT, or by any other state department of transportation. This allegation is a critical fact in distinguishing this case from Griffin Industries, and it addresses the Griffin Industries court's concern that the "similarly situated" requirement be taken seriously, lest every regulatory dispute devolve into a constitutional case.

Consequently, if what Plaintiffs allege is true, precedent establishes that a reasonable official would be on notice that such actions violate the equal protection clause. Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). Like the circumstances presented in Olech, Sioux City Bridge Co., and Allegheny Pittsburgh Coal Co., "the challenged governmental decisions [by Douglas Asphalt] involve[] a single answer to a single question." Griffin Indus., Inc., 2007 WL 2363343 at *29-*30. In the instant case, the "similarly situated" requirement, and hence any equal protection violation, can be analyzed "succinctly and at a high order of abstraction." Id.

AO 72A
(Rev. 8/82)

Plaintiffs have alleged that the GDOT Defendants intentionally treated it differently than <u>all</u> others, and Douglas Asphalt and the Spiveys contend that there was no rational basis for the different treatment. <u>Griffin Indus., Inc.</u>, 2007 WL 2363343 at *27-*28.

Because <u>Griffin Industries</u> is distinguishable, and the allegations here are relatively straightforward, <u>Olech</u> applies to a "broad range of factual circumstances" that encompasses the equal protection claim presented by Plaintiffs in this case. <u>Vinyard</u>, 311 F.3d at 1350-51; <u>Olech</u>, 528 U.S. at 563-64; <u>Griffin Indus., Inc.</u>, 2007 WL 2363343 at *27-*35; <u>see</u> <u>also</u> <u>Sioux City Bridge Co.</u>, 260 U.S. at 445; <u>Allegheny Pittsburgh Coal Co.</u>, 488 U.S. at 344.[1]

## CONCLUSION

For the reasons explained above, the GDOT Defendants are not shielded from liability by the defense of qualified immunity on Plaintiffs' equal protection claims. Of course, the Court's determination that the GDOT officials lack

---

[1] Moreover, at the time of the conduct giving rise to this lawsuit, federal law prohibited state officials from making false statements in connection with materials that are submitted to the federal Department of Transportation. 18 U.S.C. § 1020. Plaintiffs allege that the GDOT officials violated this law in the context of this case.

12

qualified immunity is subject to the GDOT officials' immediate appeal, as has been filed previously. <u>Johnson v. Clifton</u>, 74 F.3d 1087, 1090-91 (11th Cir. 1996).

**SO ORDERED**, this \_\_\_1st\_\_\_ day of October, 2007.

_____
JUDGE, UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)