**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

| | |
|---|---|
| DOUGLAS ASPHALT COMPANY, JOEL H. SPIVEY and KYLE SPIVEY, | |
| Plaintiffs, | |
| -vs- | Case No. CV206-229 |
| ANALYTICAL TESTING SERVICES, INC., | |
| Defendants. | |

**PLAINTIFFS' RESPONSE TO DEFENDANT ANALYTICAL TESTING SERVICES, INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW**

COME NOW, DOUGLAS ASPHALT COMPANY, JOEL H. SPIVEY, and KYLE SPIVEY, Plaintiffs in the above referenced action, and file this their Response to the Motion for Judgment as a Matter of Law of Defendant Applied Technical Services, Inc., showing the Court as follows:

The Plaintiff will not recite the testimony presented to the Court during the Trial of this matter. This memorandum provides citation to legal issues raised by the Defendant in its Motion for Judgment as a Matter of Law.

    A.    **The Applicable Standard.**

The instant motion is governed by Rule 50 of the Federal Rules of Civil Procedure. "'Under Rule 50, a court should render judgment as a matter of law when there is no

legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" <u>Bezalel v. Innovative Operators</u>, 2009 U.S. App. LEXIS 21147 (11th Cir. Fla. Sept. 18, 2009) (citations and quotations omitted).

"'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" <u>Corbitt v. Home Depot U.S.A.</u>, 573 F.3d 1223, 1257 (11th Cir. Ala. 2009) (internal citations and punctuation omitted).

### B. Questions of Fact Allow the Plaintiffs' "Defamation Claims" to be Determined by the Jury.

As an initial matter, the Plaintiff has not abandoned its claim for general defamation. The document cited by the Defendant in support of this claim is this Court's order, dated February 13, 2009, addresses Plaintiffs' claims against QORE, a former party to this litigation. (Doc. 179, p.10). The order of the Court cannot be construed as an abandonment by the Plaintiff of its defamation claims.

Plaintiffs will now address the merits of this claim.

In this case, it is the false test results which form the basis of the Plaintiffs' claim for libel.

Georgia law defines "libel" as a

**false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule.**

O.C.G.A. § 51-5-1(a).  Publication of a libel is a necessary prerequisite for such a statement to be actionable.  O.C.G.A. § 51-5-1(b).  Under Georgia law, a "libel is published as soon as it is communicated to any person other than the party libeled."  O.C.G.A. § 51-5-3.

### 1. The Evidence Supports a Jury Claim that ATS Made False Statements regarding Plaintiffs.

Here, Defendant argues that there is no evidence that the statements, the test results, were "false."  The evidence presented at trial, through the expert testimony of Plaintiffs' expert witness, and through the testimony of Su Zhang herself, demonstrates that the test results were not accurate.

The context in which the statements were presented is relevant in evaluating their "falsity."  They were inaccurate.  ATS knew that the results were being used to evaluate samples of road, and that GDOT was relying on these test results.  Given the fact that the test results did not indicate that ATS questioned their accuracy, as is required by ATS own procedures and engineering standards, the information communicated implied validity when no such existed.

### 2. The Evidence Supports a Jury Inference that the Statements were Made with Malice.

By its own admissions, ATS knew that the statements it made concerning the lime content of the core samples were based on faulty testing procedures. ATS knew that the addition of lanthanum to the testing procedure would have addressed this known deficiency, yet failed to make this addition. ATS also knew that the statements were made to be used in a report to be transmitted to GDOT.

As Defendant argues, the terms "common law malice" and "actual malice" are different. "Common law malice" equates to a "sense of ill will, hatred, or 'charges calculated to injure.'" Williams v. Trust Co., 140 Ga. App. 49, 56 (Ga. Ct. App. 1976).

In comparison, actual malice may be demonstrated by proof that the defendants published the material with actual knowledge that a statement is false, or with "reckless disregard as to its truth of falsity." Sparks v. Peaser, 260 Ga. App. 232, 237 (2003). "Reckless disregard" is not measured in terms or negligence, or even what a "reasonably prudent man would have done under similar circumstances," Davis v. Shavers, 225 Ga. App. 497, 501 (Ga. Ct. App., 1997) (quoting Miller v. Woods, 180 Ga. App. 486, 488 (349 S.E.2d 505) (1986)). Under the actual malice standard, "[t]he evidence must show in a clear and convincing manner that [the defendant] in fact entertained serious doubts as to the truth of his statements." Id.

The Plaintiffs submit that they have satisfied both the "common law malice" and the "actual malice" standards.

The Defendant ATS itself questioned the validity of the test results it produced. Though recognizing that the addition of lanthanum would have ameliorated the inaccuracy of the test, ATS decided not to incorporate this ingredient. This intentional omission was made with direct knowledge that the GDOT was to receive the test results.

**C.    ATS is Not Entitled to Judgment as a Matter of Law on the False Light Claim.**

In order to sustain a false light invasion of privacy claim, "a plaintiff must show that the defendant knowingly or recklessly published falsehoods about him or her and, as a result, placed him or her in a false light which would be highly offensive to a reasonable person. . . . 'In order to survive as a separate cause of action, a false light claim must allege a nondefamatory statement. If the statements alleged are defamatory, the claim would be for defamation only, not false light invasion of privacy." (Citation omitted.) Bollea v. World Championship Wrestling, 271 Ga. App. 555, 557 n. 1. (2005).

In this case, ATS has argued that its statements are not "false." The Plaintiff vigorously opposes this argument. The false light claim exists as an alternative if for some reason the Court determines that statements do not provide a basis for a defamation claim.

**D.    Injurious Falsehood.**

ATS argues that the Plaintiff has abandoned his claim for defamation, and that the Court has previously determined that the "injurious falsehood" as to it has been resolved

by the ruling of this Court on the Motion for Summary Judgment of former co-defendant QORE.

As support for its position that the Plaintiffs have abandoned their "defamation" claim, Defendant points to the portion of the Pretrial Order where the Plaintiff is asked to define who has the burden of proof. (Doc. 199, p. 9). There is no such "abandonment." On the very next page, the Plaintiffs indicate that their claims are based on the "Georgia common law." (Id. at 10.) There has been no abandonment.

### E.   ATS Is Not Entitled to Judgment as a Matter of Law on the Plaintiffs' Claims of Simple Negligence.

ATS next argues that it is entitled to Judgment as a Matter of Law on the Plaintiffs claims for simple negligence, on the grounds that there is neither a "duty," nor a breach thereof. To the contrary, this case fits squarely in the traditional principals of negligence, and the Plaintiffs' claims for simple negligence must be presented to the jury for determination.

To state a cause of action for negligence in Georgia, the following elements are essential:

>  (1) A legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm;
> 
>  (2) a breach of this standard;
> 
>  (3) a legally attributable causal connection between the conduct and the resulting injury; and,

   (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty."

Bradley Center, Inc. v. Wessner, 250 Ga. 199, 201 (Ga. 1982).

  ATS has argued that it owes not "duty" to ATS, and in the absence of such a duty, it cannot be responsible for damages sustained.  To the contrary, the "duty" arises by virtue of the fact that ATS is a professional, and from the facts and circumstances of this case.

   **1. Duty Arises From Status of ATS as "Professional."**

  This issue is controlled by the decision of the Supreme Court in Bradley Center, Inc. v. Wessner, 250 Ga. 199 (1982), which looks to traditional tort principles for the evaluation of the existence of a duty.

  In Bradley, a mental patient was under voluntary admission to a mental facility. During his stay and as part of his treatment, the mental patient "revealed to [the mental hospital's] staff that [he] would likely cause bodily harm to his wife if he had the opportunity." Id. at 200.  In spite of this information, the mental facility gave the patient a weekend pass, and during his weekend break, shot and killed his wife and another person.

  The wife's family sued the mental facility "on the theory that their father's criminal act was reasonably foreseeable" and that "the death of their mother was proximately

caused by the [facility's] negligence in issuing the weekend pass and in failing to exercise proper control over the [patients] freedom to leave the premises." Id. at 200.

The issue on appeal was whether "whether a physician can owe a legal duty of care to an injured party who was <u>not</u> his patient." The Supreme Court said "yes."

The basis for this decision was the fact that the defendant was a physician.

> The legal duty in this case did not arise out of this "consensual transaction" between doctor and patient, however, so there is no basis for a requirement of privity. **The legal duty in this case arises out of the general duty one owes to all the world not to subject them to an unreasonable risk of harm.** This has been expressed as follows: ". . . negligence is conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm." Restatement, Torts, 2d, § 282.

Id. at 201.

The legal duty defined in <u>Wessner</u> was based on the nature of the relationship of the physician to the injured party: "where the course of treatment of a mental patient involves an exercise of 'control' over him by a physician who knows or should know that the patient is likely to cause bodily harm to others, an independent duty arises from that relationship and falls upon the physician to exercise that control with such reasonable care as to prevent harm to others at the hands of the patient." Id. at 202.

The duty arises from the means of the tortfeasor to control or ameliorate the foreseeable harm. Part of the reasoning advanced by the Supreme Court in <u>Bradley</u> was the fact that the physician had some type of "control" (i.e., allowing the weekend pass) over the patient, thereby giving the physician some means of preventing the harm. ATS had at its disposal an analogous means of controlling the actions. while ATS could not

"control" GDOT, it could control the manner in which its testing procedures were communicated. It had the means to prevent the harm: either not do the tests (like the other company), or "qualify" the opinion.

The foreseeable harm is that GDOT would use the unqualified and inaccurate test results to the detriment of Douglas. On the facts of this case, ie, that ATS knew the test results were used to evaluate the lime content of paved road, the duty "falls upon" ATS to "exercise [] such reasonable care as to prevent harm to others." Expert testimony and ATS standards establish what is "reasonable care."

Also important from Wessner is that the Supreme Court was not creating a "new tort," but instead "applied our traditional tort principles of negligence to the facts of this case." Id. at 202. It was not a malpractice case, but "an ordinary negligence case in which privity has never been an essential element. Here, appellant hospital is liable to third parties because it violated its duty owed to those third parties to conform to a given standard of conduct." Id. at 203.

## 2. The Rule of Privity does not Apply.

The Georgia Rule on privity provides:

> . . . no privity is necessary to support a tort action; but, if the tort results from the violation of a duty which is itself the consequence of a contract, the right of action is confined to the parties and those in privity to that contract, except in cases where the party would have a right of action for the injury done independently of the contract

O.C.G.A. § 51-1-11(a). As explained in Wessner, the duty ATS owes arises independent of any "contract."

Two federal district court cases, decided before Wessner, imply that while an action based on the negligence of a professional was limited to the parties to the professional relationship, certain facts may warrant expansion of this rule. Both of these cases were decided before Georgia officially adopted the tort of "negligent misrepresentation," which allows an individual relying on false information to his detriment to recover from the person making the false representation for his reliance damages. Rhodes-Haverty Partnership v. Robert & Co. Assoc, 250 Ga. 680 (1983)).

In North American Company for Life and Health Ins. v. Berger, 648 F.2d 305 (5th Cir. 1981), an insurance company paying disability benefits to air traffic controllers was allowed to pursue a psychiatrist for either fraudulently or negligently certifying that the controllers were permanently disabled.

The psychiatrist argued that there could be no claim for professional negligence because the insurance company was a "patient." The Eleventh Circuit rejected this argument, finding that an "independent duty" existed in Georgia law:

> the law imposes upon persons performing architectural, engineering, and other professional and skilled services an obligation to exercise a reasonable degree of care, skill, and ability, which generally is taken and considered to be a degree of care and skill as, under the circumstances, is ordinarily employed by their respective professions.

Id. at 307 (citing Bodin v. Gill, 216 Ga. 467 (1960)). This was the requisite independent duty.

In <u>Gulf Contracting v. Bibb County</u>, 795 F.2d 980 (11th Cir. 1986), engineers were found liable to the successful bidder on a government contract for their failure to disclose cite defects in plans provided to prospective bidders for use in placing their bid. In allowing the cause of action to proceed, the Eleventh Circuit noted

> **the Georgia courts have moved away from a rigid privity requirement. An exception to the requirement will be implied where policy considerations weigh in favor of liability.**

<u>Id</u>. at 982.

Recognition of a common law tort action will not "open the door" for unlimited suits against professionals by people other than their clients. It is only those individuals or entities within the foreseeable scope of harm are entitled to bring such an action. Plaintiffs in this case are clearly members of this class.

### F.     Plaintiffs' Requested Damages are Recoverable in this Case

#### 1.     Plaintiffs' Have Shown Adequate Support for the Claim of Damage Arising from Loss of DAC's Book Value

Defendant argues, in part, that the loss of book value caused by DAC's default by GDOT and judgments in favor of DAC's bonding companies is unrecoverable because it difficult to "determine the exact amount." (Def.'s Brf. at p. 10). Such an evidentiary burden is directly contrary to Georgia law.

> "As to damages, a jury must be able to calculate the amount of damages from the data furnished and it cannot be placed in a position where an

> allowance of loss is based on guesswork. A jury must be able to calculate loss with a reasonable certainty. The party claiming damages carries not only the burden of proving the damages, but also furnishing the jury with sufficient data to estimate the damages with reasonable certainty. <u>It is not necessary, however, that the party on whom the burden thus rests should submit exact figures</u>."

Paul Davis Systems of Savannah v. Peth, 201 Ga. App. 734, 735-736 (1991) (emphasis added). "The rule against the recovery of vague, speculative, or uncertain damages relates more especially to the uncertainty as to cause, rather than uncertainty as to the measure or extent of the damages. Mere difficulty at fixing their exact amount, where proximately flowing from the alleged injury, does not constitute a legal obstacle in the way of their allowance." Freightliner Chattanooga v. Whitmire, 262 Ga. App. 157, 162 (2003). Thus, the fact that Plaintiffs may not be able to place an exact dollar amount on the loss of book value suffered by DAC due to Defendant's misconduct does not bar Plaintiffs' recovery for this element of damage.

The fact that the direct cause of some of the defaults suffered by DAC was DAC's inability to complete the project in a timely fashion does not lend any support to Defendant's argument. As a result of ATS improperly agreeing to perform a non-standard test for GDOT that it knew was fundamentally flawed and produced wholly unscientific and inaccurate results, a cascade of foreseeable events occurred that led to the ultimate demise of DAC. At all relevant times, ATS was aware that the tests it was performing for GDOT were being used to challenge the adequacy of asphalt used on one or more GDOT projects. ATS supplied with GDOT with the scientific veneer it desired

to justify its systematic default of DAC. "[U]nder Georgia law there may be more than one proximate cause of an injury." Lindsey v. Navistar Int'l Transp. Corp., 150 F.3d 1307, 1317 (11th Cir. Ga. 1998) (citing Dep't of Transportation v. Blair, 220 Ga. App. 342 (1996)); Brown v. Advantage Engineering, Inc., 732 F. Supp. 1163, 1172 (N.D. Ga. 1990).

Thus, it is not a "defense to an action for an injury resulting from negligence that the negligence of a third person contributed to cause the injury, if the negligence of the defendant was an efficient cause without which the injury would not have occurred." Stern v. Wyatt, 140 Ga. App. 704 (1976). "If the original negligent actor reasonably could have anticipated or foreseen the intervening act and its consequences, then the intervening act of negligence will not relieve the original actor from liability for the consequences resulting from the intervening act." Eubanks v. Business Equipment Center of Atlanta, Inc., 161 Ga. App. 202 (1982).

With respect to damages, "[a] Defendant may be held liable for an injury when the Defendant commits a negligent act that puts other forces in motion or operation resulting in the injury when such other forces are the natural and probable result of the act that the Defendant committed and that reasonably should have been foreseen by Defendant. When injuries could not be reasonably have [sic] foreseen as the natural, reasonable, and probable result of the original negligent act, if any, then there can be no recovery." Delson v. Ga. DOT, 295 Ga. App. 84, 88 (2008). In the present case, the direct cause of DAC's project defaults and the resulting surety expenditures is not determinative of ATS'

liability. Using ATS' flawed test results, GDOT embarked on a systematic attack on DAC that caused an immediate and substantial impact upon DAC's ability to function as a roadway contractor. The financial distress forced upon DAC caused to be unable to perform its project duties as it may otherwise had. The resulting project default and bonding losses are all logically traceable to ATS' conduct and DAC's loss of book value is therefore recoverable.

### 2. The Loans to DAC from the Spiveys are a Recoverable Element of Damages

As Plaintiffs have shown at trial, Kyle, Joel and Mary Jean Spivey all made loans to DAC in an attempt to keep it afloat. It is undisputed that such loans are a valid debt on DAC's books that must be repaid. The current exact amount of the loans and accrued is certainly ascertainable. As stated above, the financial troubles in which DAC found itself in recent years and for which these loans were necessary were due to ATS' conduct. The fact that Mary Jean Spivey is not a party in this case does not change the fact that DAC is still obligated to repay her loan. Thus, Plaintiffs are entitled to recover this element of damages in this case.

### 3. DAC is Entitled to Recover Attorneys' Fees and Expenses Incurred in Discrediting ATS' Tests in Prior Litigation

As a result of ATS improperly agreeing to perform a non-standard test for GDOT that it knew was fundamentally flawed and that produced wholly unscientific and inaccurate results, DAC was forced to file and defend claims in both Turner County and

Fulton County courts. The prime issue in both cases was the validity of the ATS test methodology and test results. Due to ATS' adherence to, and its steadfast defense of, its hopelessly defective tests, DAC was forced to expend tremendous amounts of time and money to eventually have both courts exclude ATS' test from evidence. As with Plaintiffs' other damages in this case, the attorneys' fees associated with these efforts are directly traceable to ATS' misconduct.

### G. Plaintiffs' Claims for Attorneys' Fees and Punitive Damages are Valid

#### 1. Attorneys' Fees

O.C.G.A. § 13-6-11 provides that attorneys' fees may be awarded where a party "has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." "The plaintiff need not show that all three provisions of the statute are present, but only that one of the three conditions exists." Parking Co. of America v. Sucan, 195 Ga. App. 616, 618 (1990).

Assuming solely for argument purposes that Plaintiffs' claims against FHP involve a bona fide controversy, Plaintiffs should nonetheless be permitted to pursue their claim for attorney's fees on the grounds of ATS' bad faith and stubborn litigiousness. Latham v. Faulk, 265 Ga. 107, 108 (1995) ("Where a bona fide controversy exists, attorney's fees may be awarded under O.C.G.A. § 13-6-11 only where the party sought to be charged has acted in bad faith in the underlying transaction.").

Bad faith exists where a contracting party's breach is prompted "by some interested or sinister motive," where the party "acted through ill will or furtive design with regard to the performance of the contract," or where "the contract was made in bad faith." McDonald v. Winn, 194 Ga. App. 459, 460 (1990); Williams Tile & Marble Co., Inc., v. Ra-Lin & Assocs., Inc., 206 Ga. App. 750, 752 (1992). Additionally, "[i]t is well established as the law of this state that every intentional tort invokes a species of bad faith and entitles a person so wronged to recover the expenses of litigation including attorney fees." Carroll v. Johnson, 144 Ga. App. 750, 752 (1978).

In the present case, the evidence shows that ATS improperly agreed to perform a non-standard test for GDOT that it knew was fundamentally flawed and produced wholly unscientific and inaccurate results. ATS was further aware that its "tests" would be (or had been) used to challenge the quality of asphalt used on roadways. Based upon these events, Plaintiffs have asserted intentional torts in this case –defamation, false light, and injurious falsehood. These intentional torts necessarily involve an element of bad faith that would support Plaintiffs' claim for attorneys' fees.

### 2. Plaintiffs' Claim for Punitive Damages Should be Allowed to be Considered by the Jury

O.C.G.A. § 51-12-5.1 (b) allows punitive damages where "the defendant's actions showed willful misconduct, malice, fraud, . . . or that entire want of care which would raise the presumption of conscious indifference to consequences." "The question of

entitlement to punitive damages and the amount thereof is a jury question." Pecan Shoppe of Fredericksburg v. Bank of Dodge Cty., 217 Ga. App. 295, 296 (1995).

As mentioned above, Plaintiffs have asserted several intentional torts which allege that ATS repeatedly engaged in misconduct sufficient to support their claims for punitive damages. For example, Plaintiffs' claim for defamation, by definition, would support a finding by the jury that punitive damages would be appropriate against ATS. See Kent v. A.O. White, Jr., Consulting Eng'rs, P.C., 253 Ga. App. 492, 499 (2002) (holding slander is intentional tort which comes under willful misconduct, malice, wantonness, or entire want of care authorizing punitive damages).

## **CONCLUSION**

The Defendants' Motion for Judgment as a Matter of Law must be denied on all counts.

**THIS THE  30th  DAY OF SEPTEMBER, 2009.**

        SAVAGE, TURNER, PINSON & KARSMAN

        BY:  /s/ Brent J. Savage
               Brent J. Savage
               Georgia Bar No. 580600
               C. Dorian Britt
               Georgia Bar No. 083259

304 East Bay Street
Post Office Box 10600
Savannah, Georgia  31412
(912) 231-1140

THE FUTCH LAW FIRM
Kenneth E. Futch, Jr.
Georgia Bar No. 281158
P.O. Box 943
Blackshear, GA 31516-0943
(912) 449-3911
(912) 449-3911

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

| | |
|---|---|
| DOUGLAS ASPHALT COMPANY, JOEL H. SPIVEY and KYLE SPIVEY,  Plaintiffs,  -vs-  ANALYTICAL TESTING SERVICES, INC.,  Defendants. | Case No. CV206-229 |

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing with the clerk of the Court using the CM/ECF system which will send notification of such filing all parties in this case .

**THIS THE 30th DAY OF SEPTEMBER, 2009.**

                                        SAVAGE, TURNER, PINSON & KARSMAN

                                  BY:   /s/ Brent J. Savage
                                                 Brent J. Savage
                                                 Georgia Bar No. 580600
                                                 C. Dorian Britt
                                                 Georgia Bar No. 083259

SAVAGE, TURNER, PINSON & KARSMAN
P. O. Box 10600
Savannah, Georgia 31412
(912) 231-1140
(912) 231-9157 - facsimile
bsavage@savagelawfirm.net