IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | | |
|---|---|---|
| DOUGLAS ASPHALT COMPANY, JOEL H. SPIVEY, and KYLE SPIVEY, | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| APPLIED TECHNICAL SERVICES, INC., | : | |
| | : | |
| Defendant. | : | NO. CV206-229 |

## COURT'S INSTRUCTIONS TO THE JURY

Members of the Jury:

I will now explain to you the rules of law that you must follow and apply in deciding this case. When I have finished, you will go to the jury room and begin your discussions — what we call your deliberations.

In deciding this case, you must follow and apply all of the law as I explain it to you, whether you agree with that law or not. You must not let your decision be influenced in any way by sympathy, or by prejudice, for or against anyone.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice.

When a corporation is involved, of course, it may act

only through people as its employees. In general, a corporation is responsible under the law for any of the acts and statements of its employees which are made within the scope of their duties as employees of the company.

In your deliberations you should consider only the evidence — that is, the testimony of the witnesses and the exhibits I have admitted in the record. But as you consider the evidence, both direct and circumstantial, you may make deductions and reach conclusions which reason and common sense lead you to make.

"Direct evidence" is the testimony of one who asserts actual knowledge of a fact, such as an eyewitness. "Circumstantial evidence" is proof of a chain of facts and circumstances tending to prove, or disprove, any fact in dispute. The law makes no distinction between the weight you may give to either direct or circumstantial evidence.

Remember that anything the lawyers say is not evidence in the case. And, except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your decision concerning the facts. It is your own recollection and interpretation of the evidence that controls.

Now, in saying that you must <u>consider</u> all of the

evidence, I do not mean that you must <u>accept</u> all of the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision, you may believe or disbelieve any witness, in whole or in part. Also, the number of witnesses testifying concerning any particular matter is not controlling.

In deciding whether you believe or do not believe any witness, I suggest that you ask yourself a few questions:

Did the person impress you as one who was telling the truth?

Did the witness have any particular reason not to tell the truth?

Did the witness have a personal interest in the outcome of the case?

Did the witness seem to have a good memory?

Did the witness have the opportunity and ability to observe accurately the things he or she testified about?

Did the witness appear to understand the questions clearly and answer them directly?

Did the witness' testimony differ from other testimony or other evidence?

You should also ask yourself whether there was evidence

tending to prove that the witness testified falsely concerning some important fact or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, which was different from the testimony he or she gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people naturally tend to forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was simply an innocent lapse of memory or an intentional falsehood. The significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

Certain testimony has been read to you by way of deposition, or presented to you by video, consisting of sworn, recorded answers to questions asked of the witnesses in advance of the trial by one or more of the attorneys in the case. If a witness cannot be present to testify from the witness stand during the trial, his or her testimony may be offered by deposition. Such testimony is entitled to the same consideration, and is to be judged as to credibility,

and weighed, insofar as possible, in the same way as if the witness had been present, and had testified from the witness stand.

When knowledge of a technical subject matter might be helpful to the jury, a person having special training or experience in that technical field, one who is called an expert witness, is permitted to state his or her opinion concerning those technical matters.

Merely because an expert witness has expressed an opinion, however, does not mean that you must accept that opinion. The same as with any other witness, it is up to you to decide whether to rely upon it.

In this case, it is the responsibility of the Plaintiffs to prove every essential part of the Plaintiffs' claim by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence which is enough to persuade you that a claim or contention is more likely true than not true.

In deciding whether any fact has been proven by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may

have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of the Plaintiffs' claim by a preponderance of the evidence, you should find for the Defendant as to that claim.

I will now summarize for you the contentions of the parties in this case.

According to Plaintiffs, beginning in 1996, the Georgia Department of Transportation, or GDOT, awarded Douglas Asphalt Company road paving projects that required resurfacing parts of I-95 and I-75 using a type of asphalt mix specified by GDOT. One of the ingredients in the asphalt mix was hydrated lime.

Around June 2003, GDOT entered into an agreement with Qore, Inc., whereby Qore agreed to pull asphalt samples from the I-75 and I-95 projects and perform certain tests, including a tensile strength test, "fizz" test, and a coloration indicator. Thereafter, Qore entered into an agreement with Applied Technical Services, or ATS, whereby ATS agreed to perform atomic absorption testing on the asphalt samples.

Plaintiffs maintain that, by December 2003, ATS knew that the atomic absorption test results were inaccurate and

invalid, at least for the purposes for which GDOT was using the results. Nonetheless, Plaintiffs insist that ATS continued atomic absorption testing without making any changes to ensure accuracy and validity. Plaintiffs point to litigation in the state courts of Georgia in support of their assertion that ATS' testing was unreliable and unscientific. In those cases, two Superior Courts found the test results to be unreliable, and excluded the results from evidence. As a result of the testing performed by ATS, Plaintiffs contend that Douglas Asphalt was declared in default on the two projects by GDOT, and that it was removed from GDOT's bidder's list, which forced Douglas Asphalt out of business.

To the contrary, the Defendant strongly denies the Plaintiffs' claims. ATS agrees that it was hired by Qore to perform asphalt testing, but ATS insists that the tests it performed were at GDOT's direction. ATS maintains that it did not develop any of the tests, or verify to GDOT that the tests were valuable indicators of anything, including lime content.

At all times pertinent to this action, ATS asserts that it was acting under contract to perform tests and supply test results to the entity that had contracted for the

services. ATS denies having any independent duty to the Plaintiffs to decide, or opine about, the usefulness of the tests in performing tests for Qore or GDOT under contract. In other words, ATS asserts that it is not responsible for the manner in which GDOT used the test results.

Remember, these are only the contentions of the parties and are not evidence in the case.

In this case, the Plaintiffs claim that the Defendant was negligent and that such negligence was a legal cause of damage sustained by the Plaintiffs. Specifically, the Plaintiffs allege that the Defendant was negligent in performing inaccurate atomic absorption testing.

In order to prevail on this claim the Plaintiffs must prove both of the following facts by a preponderance of the evidence:

First:   That the Defendant was "negligent;" and

Second:  That such negligence was a "legal cause" of damage sustained by the Plaintiffs.

"Negligence" is the failure to use reasonable care. Reasonable care is that degree of care that a reasonably careful person would use under like circumstances. Negligence may consist either in doing something that a reasonably careful person would not do under like

circumstances, or in failing to do something that a reasonably careful person would do under like circumstances.

Negligence is a "legal cause" of damage if it directly and in natural and continuous sequence produces, or contributes substantially to producing such damage, so it can reasonably be said that, except for the negligence, the loss, injury or damage would not have occurred. Negligence may be a legal cause of damage even though it operates in combination with the act of another, some natural cause, or some other cause if such other cause occurs at the same time as the negligence and if the negligence contributes substantially to producing such damage.

The Defendant may be held liable for an injury where it commits a negligent act that puts other forces in motion or operation, which results in the injury, when such other forces are the natural and probable result of the act which the Defendant committed and which reasonably should have been foreseen by the Defendant. When the injuries could not reasonably have been foreseen as the natural, reasonable, and probable result of the original negligent act, then there can be no recovery. If the chain reaction that resulted from the Defendant's alleged negligence, if any, meets the above tests, then the Plaintiffs can recover.

In addition to the Plaintiffs' negligence claim, they also assert a defamation, or libel, claim. A libel is a false and malicious defamation of another expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule.

In order to prevail on this claim, the Plaintiffs must prove the following facts by a preponderance of the evidence:

First:   That the Defendant made one or more false statements,

Second:  That such statements were "malicious,"

Third:   That the statements were "published," and

Fourth:  That the Defendant acted with some level of fault in making the statements, amounting to at least negligence.

Members of the Jury, under Georgia law, the term "malice," or "malicious," has special and differing meanings, depending on the context in which it is used. The term malice commonly means that the action was taken from a sense of ill will, hatred, or that the statements made were calculated to injure. However, malice is also shown where these is evidence that the statements were made with actual

knowledge that the statements were false, or with reckless indifference as to their truth or falsity. If you find that Plaintiff has shown malice in either respect, you should consider this element of proof satisfied. Under Georgia libel law, malice may be inferred from the character of the charge. However, the existence of malice may be rebutted by proof. In all cases, such proof shall be considered in mitigation of damages.

Members of the Jury, I further charge you that Georgia law defines the libel element of "publication" in a manner different than how that term is commonly used in everyday speech. Under Georgia law, a libel is published as soon as it is communicated to any person other than the party libeled.

If a preponderance of the evidence does not support the Plaintiffs' claims, then your verdict should be for the Defendant. If, however, a preponderance of the evidence does support one or more of the Plaintiffs' claims, then your verdict should be for the Plaintiffs.

If the evidence proves negligence and/or libel on the part of the Defendant that was a legal cause of damage to the Plaintiffs, you should award the Plaintiffs an amount of

money that will fairly and adequately compensate the Plaintiffs for such damage.

In considering the issue of the Plaintiffs' damages, you are instructed that you should assess the amount you find to be justified by a preponderance of the evidence as full, just and reasonable compensation for all of the Plaintiffs' damages, no more and no less. Compensatory damages are not allowed as a punishment and must not be imposed or increased to penalize the Defendant. Also, compensatory damages must not be based on speculation or guesswork because it is only actual damages that are recoverable.

You should consider the following elements of damage, to the extent you find them proved by a preponderance of the evidence, and no others:

> Special damages, in the amount specifically shown by the Plaintiffs.

You are instructed that any person who claims damages as a result of an alleged wrongful act on the part of another has a duty under the law to "mitigate" those damages--that is, to take advantage of any reasonable opportunity that may have existed under the circumstances to reduce or minimize the loss or damage.

So, if you should find from a preponderance of the evidence that the Plaintiffs failed to seek out or take advantage of a business or employment opportunity that was reasonably available under all the circumstances shown by the evidence, then you should reduce the amount of the Plaintiffs' damages by the amount that could have been reasonably realized if the Plaintiffs had taken advantage of such opportunity.

The Plaintiffs also claim that the acts of the Defendant were done with malice or reckless indifference to the Plaintiffs' rights so as to entitle the Plaintiffs to an award of punitive damages in addition to compensatory damages.

If you find for the Plaintiffs, and if you further find, by clear and convincing evidence, that the Defendant did act with malice or reckless indifference to the Plaintiffs' rights, the law would allow you, in your discretion, to assess punitive damages against the Defendant as punishment and as a deterrent to others. "Clear and convincing evidence" is something more than a preponderance of the evidence; it is evidence that leaves you with a firm conviction that the claim is true. Members of the Jury, I caution you that you cannot award punitive damages based on

a finding of negligence alone, but that to award such damages, you must find a higher degree of fault amounting to recklessness, or knowing or intentional conduct.

When assessing punitive damages, you must be mindful that punitive damages are meant to punish the Defendant for the specific conduct that harmed the Plaintiffs in the case and for only that conduct.  For example, you cannot assess punitive damages for the Defendant being a distasteful individual or business.  Punitive damages are meant to punish the Defendant for this conduct only and not for conduct that occurred at another time.  Your only task is to punish the Defendant for the actions it took in this particular case.

Of course, the fact that I have given you instructions concerning the issue of Plaintiffs' damages should not be interpreted in any way as an indication that I believe that Plaintiffs should, or should not, prevail in this case.

Any verdict you reach in the jury room must be unanimous.  In other words, to return a verdict, you must all agree.  Your deliberations will be secret.  You will never have to explain your verdict to anyone.

It is your duty as jurors to discuss the case with one another in an effort to reach agreement, if you can do so.

Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury.

While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you were wrong. But do not give up your honest beliefs solely because the others think differently or merely to get the case over.

Remember, in a very real way, you are judges — judges of the facts. Your only interest is to seek the truth from the evidence in the case.

When you go to the jury room, you should first select one of your members to act as your foreperson. The foreperson will preside over your deliberations and will speak for you here in court.

A form of verdict has been prepared for your convenience.

[EXPLAIN VERDICT FORM]

You will take the verdict form to the jury room and, when you have reached unanimous agreement, you will have your foreperson fill in the verdict form, date and sign it, and then return to the courtroom.

If you should desire to communicate with me at any time, please write down your message or question and pass the note to the marshal who will bring it to my attention. I will then respond as promptly as possible, either in writing or by having you returned to the courtroom so that I can address you orally.

I caution you, however, with regard to any message or question you might send, that you should not tell me your numerical division at the time.