IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

DOUGLAS ASPHALT COMPANY, JOEL :
H. SPIVEY, and KYLE SPIVEY,
:
    Plaintiffs,           CIVIL ACTION
:
v.                        NO. CV206-229
:
QORE, INC., and APPLIED
TECHNICAL SERVICES, INC.,     :

    Defendants.           :

## *ORDER*

Plaintiffs, Douglas Asphalt Company, Joel H. Spivey, and Kyle Spivey, filed the above-captioned case against Defendants, Qore, Inc., and Applied Technical Services, Inc. ("ATS"), asserting state-law tort claims for negligence and defamation. Presently before the Court are a number of motions, including (1) ATS' motion for judgment as a matter of law (doc. no. 279), and in the alternative, motion for a new trial, and (2) Plaintiffs' motion for reconsideration of the Court's entry of summary judgment as to Qore. (Doc. no. 299.)

Because the jury's verdict was supported by the evidence, ATS' motion will be **DENIED**. Because Plaintiffs are not entitled to relief under Rule 60(b) or Rule 54(b), Plaintiffs' motion for reconsideration will be **DENIED**.

## BACKGROUND

The Georgia Department of Transportation ("GDOT") hired Douglas Asphalt to perform asphalt paving services on two interstate highways in Georgia, I-95 and I-75. The instant case arises out of those projects. In June 2003, GDOT retained Qore to test asphalt samples relating to the Douglas Asphalt projects to help determine the level of lime content in the asphalt. Qore performed color, tensile strength, and "fizz" testing on numerous asphalt samples. ATS also performed related atomic absorption testing for Qore and GDOT, in an attempt to determine the specific level of lime content in the asphalt samples.

Plaintiffs presented evidence at trial that suggested that ATS knew that the tests it used to determine lime content levels were inaccurate. According to Plaintiffs, GDOT relied on these false test reports and placed Douglas Asphalt in default on the highway projects on October 4, 2004. During September and October 2009, the Honorable Anthony A. Alaimo presided over a five day trial in the case, and a jury returned a verdict of $150 million in favor of Plaintiffs and against ATS.

2

*DISCUSSION*

**I. ATS' Motion for Judgment as a Matter of Law or a New Trial**

Under Federal Rule of Civil Procedure 50, a district court can grant judgment as a matter of law when there is no "legally sufficient evidentiary basis" for reasonable jury to return a verdict in favor of a party on the claim. Fed. R. Civ. P. 50(a)(1). After trial, a non-prevailing party may renew its motion under Rule 50, and seek a new trial in the alternative. Fed. R. Civ. P. 50(b) & 59.

> A trial judge may grant a motion for a new trial if he believes the verdict rendered by the jury was contrary to the great weight of the evidence. "Although a trial judge cannot weigh the evidence when confronted with a motion [for judgment] notwithstanding the verdict, in a motion for a new trial the judge is free to weigh the evidence."
> . . . The trial court, however, must find the verdict contrary to the great, and not merely the greater, weight of the evidence. . . . Finally, when independently weighing the evidence, the trial court is to view not only that evidence favoring the jury verdict but evidence in favor of the moving party as well.

*Williams v. Valdosta*, 689 F.2d 964, 973 (11th Cir. 1982) (quoted and cited sources omitted).

**A. *Defamation Claim***

ATS argues that it is entitled to judgment as a matter

of law as to Plaintiffs' defamation claim because it was abandoned by Plaintiffs prior to trial. ATS argues that, by virtue of Plaintiffs' legal argument raised in response to a co-Defendant's motion for summary judgment, the defamation claim against ATS was withdrawn.

On February 13, 2009, Judge Alaimo entered an order granting Qore's motion for summary judgment as to Plaintiffs' defamation claim. In that order, Judge Alaimo discussed the fact that, for the first time in the case, Plaintiffs' response in opposition to Qore's motion characterized their defamation claim as one for "injurious falsehood," commercial disparagement, or trade libel. Judge Alaimo ultimately rejected Plaintiffs' lawyers' attempt to extend the statute of limitations by this re-characterization of their defamation claim for several reasons. (Doc. no. 179 at 7-10.) But nothing in Judge Alaimo's order undermined Plaintiffs' defamation claim against ATS. Rather, the order merely rejected Plaintiffs' attempt to re-characterize their defamation claim as a different claim, and dismissed the claim against Qore as barred by the statute of limitations.[1]

---

[1] ATS did not raise the statute of limitations as an affirmative defense in this case, and did not make similar arguments as Qore submitted for summary judgment on the defamation claim. Dkt. Nos. 49, 161, & 165.

4

ATS also notes that Plaintiffs continued to refer to their defamation claim in the pretrial order as one for injurious falsehood. It may have been careless for Plaintiffs to continue to use this terminology after Judge Alaimo's summary judgment order of February 13, 2009. However, given that the major harm to reputation befell a business, not a person, Plaintiffs' continued conceptualization of the cause of action as trade libel is understandable. More significantly, Plaintiff submitted requests to charge at the time of the pretrial conference based on Georgia defamation law, not referencing any claim for injurious falsehood or the Restatement of Torts section 623A. (Doc. no. 202 at 23-24.) The case was tried as a negligence and defamation case by the parties, and Judge Alaimo's jury instructions explained basic Georgia libel law, not its distant cousin, commercial disparagement. (Doc. no. 273 at 10-11); see Ga. Code Ann. §§ 51-5-1, 51-5-3, & 51-5-5.

The Court finds that the evidence, viewed in the light most favorable to the jury's verdict, supports Plaintiffs' defamation claim. Plaintiffs argued that ATS defamed Plaintiffs by reporting atomic absorption test results to GDOT. To prevail on its libel claim, Plaintiffs had to

demonstrate that ATS (1) made a false statement, (2) with malice, (3) that the statement was published, and (4) that ATS was at least negligent in making the statement. Ga. Code Ann. §§ 51-5-1 & 51-5-3; *Gettner v. Fitzgerald*, 297 Ga. App. 258, 262 (2009)(private person must prove ordinary negligence).

Plaintiffs' evidence at trial showed that ATS knew that the atomic absorption test results were unreliable and inaccurate, but reported those results to GDOT anyway, which directly led to GDOT finding Douglas Asphalt in default.[2] Dr. Zuomin "Sue" Zhang, a chemist at ATS, performed the majority of the 560 atomic absorption tests that gave rise to this lawsuit. In August 2003, Zhang began testing the Douglas Asphalt samples. By December 2003, Zhang began noticing discrepancies in the test results, and she testified that she suggested to GDOT that adding lanthanum during the testing process might fix the problem. (Doc. no. 289, Trial Transcript 117 & 121-22.) Zhang testified that GDOT did not accept this recommendation.

According to Zhang's testimony at trial, presented by video deposition, she first learned that the samples were from

---

[2] ATS' continued reliance on *Davis v. Sherwin-Williams Co.*, 242 Ga. App. 907, 908 (2000), and the related cases cited by Defendant, are rejected for the reasons stated in Judge Alaimo's summary judgment order dated February 13, 2009. Dkt. No. 179 at 6-7.

6

Douglas Asphalt in the summer of 2004, when she was not quite halfway through testing the samples. Zhang testified that her boss, Phil Rogers, told her the samples came from asphalt produced by Douglas Asphalt. *Id.* at 124-25. Based on this circumstantial evidence, a reasonable jury could find that ATS continued to perform this inaccurate testing for pecuniary gain, with the knowledge that its conduct would harm Douglas Asphalt.

The Court concludes that the defamation claim was not abandoned by Plaintiffs, and that it was supported by the evidence presented at trial. Zhang's testimony could support a reasonable jury in finding that ATS published false test reports to GDOT, and that this conduct was calculated to injure Douglas Asphalt. Therefore, the Court declines ATS' request for judgment as a matter of law or a new trial on this claim.

B. *Negligence Claim*

ATS argues that Plaintiffs' negligence claim is not legally tenable. ATS first raised this argument on the penultimate day of trial, which Judge Alaimo rejected the following day, and submitted the case to the jury. (Doc.

7

nos. 269 at 7-9 & 271.) ATS argues that it owed no duty to Plaintiffs, citing to Judge Alaimo's summary judgment order in favor of its co-Defendant, Qore. (Doc. no. 194 at 5.)

The Court rejects Defendant's argument that there was no duty in this case. ATS owed Douglas Asphalt a duty to exercise reasonable care in its conduct and activities. Moreover, Plaintiffs' negligence case against ATS is distinguishable from the evidence presented in support of the claim against Qore, which Judge Alaimo found insufficient as a matter of law on April 27, 2009.

Notably, the atomic absorption tests performed by ATS purported to reveal a specific lime content in the various road samples, which was critical in GDOT's decision to find Douglas Asphalt in default for not putting enough lime into the asphalt mixture that it placed on I-95 and I-75. Significantly, there was evidence submitted in the case that GDOT hired an independent lab, ATS, for a reason: to perform reliable testing, and that GDOT's reliance was communicated to ATS. George Lian, a GDOT chemist, testified that GDOT expected ATS to devise its own method for evaluating the road samples. (Doc. no. 291, Trial Transcript 204.) Lian's testimony provides a rational basis on which a jury could find that GDOT was depending on ATS to perform reliable testing,

and to develop such tests if necessary. *Id.* at 204-05 & 237-38. Plaintiffs' evidence showed sufficient evidence of negligence by ATS to sustain the jury's verdict. Because Plaintiffs' negligence claim against ATS is independent of any contractual duty ATS owed to GDOT, section 324A of the Second Restatement of Torts and *Moody v. Martin Motor Co.*, 76 Ga. App. 456, 461-62 (1948), do not inform the Court's analysis.

> It is axiomatic that a single act or course of conduct may constitute not only a breach of contract but an independent tort as well, if in addition to violating a contract obligation it also violates a duty owed to plaintiff independent of contract to avoid harming him. Such an independent harm may be found because of the relationship between the parties, or because of defendant's calling or because of the nature of the harm.

*Gillis v. Orkin Exterminating Co.*, 172 Ga. App. 507, 507 (1984)(citations omitted).

Based on the evidence presented at trial, the jury was entitled to conclude that it was foreseeable that the inaccurate test results would cause harm to Plaintiffs. *See Gulf Contracting v. Bibb County*, 795 F.2d 980, 982 (11th Cir. 1986)(interpreting Georgia law); *N. Am. Co. for Life & Health Ins. v. Berger*, 648 F.2d 305, 306-07 (5th Cir. 1981)(same). "[U]nder Georgia law, there may be more than one proximate cause of an injury." *Lindsey v. Navistar Int'l Transp. Corp.*,

150 F.3d 1307, 1317 (11th Cir. 1998).

ATS is not entitled to a directed verdict or a new trial on Plaintiffs' negligence claim.

C.  *The Jury's Damages Award Was Justified by the Evidence*

The Court concludes that Plaintiffs showed their damages with reasonable certainty, and that the jury's $150 million verdict was not the result of speculation or guesswork. The leading case relied on by Defendant establishes that longstanding Georgia law runs contrary to the notion that Plaintiffs' evidence need be as exact as to damages:

> Where a party sues for specific damages, he has the burden of showing the amount of the loss, and of showing it in such a way that the jury may calculate the amount from the figures furnished, and will not be placed in the position where their allowance of any sum would be mere guesswork. However, the party does not lose his right of action for the damages because he can not furnish exact figures. It is often the case that witnesses are called on to testify to the weight of a thing though they have never weighed it; or to testify to length of time though they have kept no count of the days or hours; or to testify to value, which is usually a matter of opinion. In all these cases, more accurate source of inquiry not being available, the witness states his best judgment, and this is regarded as being of evidentiary value. The jurors are not bound to accept the estimate or best judgment of a witness, but they may do so.

*Nat'l Refrigerator & Butchers Supply Co. v. Parmalee*, 9 Ga.

App. 725, 726-27 (1911).

Douglas Asphalt's former accountant, Carrol Purvis, testified that the company's loss of its entire net worth of about $15 million was attributable to the default letters issued by GDOT after ATS submitted the atomic absorption test results to the state agency. Contrary to Defendant's argument, a rational jury could attribute Douglas Asphalt going out of business, and loss of its entire net worth, to the faulty testing, rather than Hurricane Katrina, which affected oil prices and thus harmed Plaintiffs' business to some small, indeterminate degree. (Doc. no. 291, Trial Transcript 364-65.)

Plaintiffs submitted evidence that their bonding company, Arch Insurance Company, obtained a $88 million dollar judgment, after Douglas Asphalt was unable to complete various paving projects in south Georgia after the default. Plaintiffs presented evidence that they had to turn over $40 million in collateral to Arch Insurance Company, to satisfy Arch's judgment against it in part. Additionally, the evidence showed that Fidelity and Deposit Company of Maryland obtained a $16 million judgment on another bond claim against Plaintiff. *Id.* at 366-67.

Defendant argues that Plaintiffs' attorneys' fees, relating to prior litigation and amounting to $3.8 million, are not recoverable as damages. Plaintiffs rejoin that its attorneys' fees, like its other damages, are directly traceable to ATS' misconduct. Indeed, the leading case cited by Defendant supports the notion that Plaintiffs' lawyers' fees incurred in a related action, but caused by a defendant's wrongdoing, "could be taken into consideration by the jury in estimating damages[.]" *Atl. Coast Line R.R. v. Nellwood Lumber Co.*, 21 Ga. App. 209, 216 (1917).

Plaintiff does not have to show bad faith or stubborn litigiousness to recover such fees. *Id.; see also Eways v. Georgia R. Bank*, 806 F.2d 991, 993 & n.2 (11th Cir. 1986)(discussing the recovery of attorney's fees under Georgia Code sections 13-1-11 and 13-6-11). "In all cases, necessary expenses consequent upon the injury done are a legitimate item in the estimate of damages." Ga. Code Ann. § 51-12-7.

In an attempt to maintain Douglas Asphalt as a going concern, Joel Spivey loaned the business $15.9 million, and Kyle Spivey loaned it $1.6 million. Plaintiffs' evidence also showed that Mary Jean Spivey (Kyle Spivey's mother and Joel Spivey's ex-wife) loaned $12 million to Douglas Asphalt, and

that the business was legally obliged to repay this debt. Such a debt is properly recoverable as damages suffered by Douglas Asphalt.

Contrary to Defendant's argument, considering all the evidence, the Court does not find that the verdict for $150 million was a result of "bias or gross mistake."[3] *Western & Atl. R.R. v. Burnett*, 79 Ga. App. 530, 542 (1949). The evidence presented at trial supports the jury's award. Because the verdict was not exorbitant in light of the evidence presented at trial, the Court will not set aside the award or consider remittitur.

The verdict was not contrary to the great weight of the evidence, and ATS is not entitled to judgment as a matter of law or a new trial.

---

[3] Considering all the evidence together, it appears that the jury's calculation of damages closely matched the evidence in the case, taking into account the judgments obtained by Arch and Fidelity and Deposit, the loss of book value of Douglas Asphalt, the loans that the three Spiveys made to the business, and the attorneys' fees and expert witness fees incurred in the litigation spawned throughout Georgia by the GDOT default and the ATS test reports. Those special damages add up to $152.3 million. Accordingly, the award of $150 million was justified by the evidence. The case relied on by ATS, *First Southern Bank v. C & F Servs.*, 290 Ga. App. 304, 308 (2008), is not to the contrary. Although Plaintiffs' counsel asked for a lower figure, $43.8 million (and misstated the specific damage figures in a couple of instances), during closing argument, the jury's award of damages is not limited or controlled by a lawyer's argument, but rather is guided by the evidence in the case.

## II. Plaintiffs' Motion to Reconsider

According to Plaintiffs, on April 5, 2007, Plaintiffs served a request for production of documents on Qore. Plaintiffs also served a deposition notice on Qore, pursuant to Rule 30(b)(6). Qore designated Howard Allred as its corporate representative, and his deposition was taken on May 16, 2007. Qore informed Plaintiffs that it refused to produce most documents requested by Plaintiffs until after GDOT's motion for a protective order was ruled upon. Although a privilege log was filed by GDOT relating to Qore's work on the project, Qore did not seek a protective order or file a privilege log itself, pursuant to Rule 26(b)(5)(A). After Plaintiffs' production request, Qore offered to provide Plaintiffs with access to their files, or to send Plaintiffs' copies, but Plaintiffs never scheduled an inspection time or asked for the copies.

Under Rule 60(b), the Court balances the policies of certainty and finality against the other important considerations set out in the rule. The rule gives the Court "an escape valve to protect the fairness and integrity of litigation in the federal courts." *Rozier v. Ford Motor Co.*,

573 F.2d 1332, 1339 (5th Cir. 1978).[4]

Plaintiffs assert that Qore's failure to file a privilege log constitutes a waiver of the privilege as to any documents claimed to be protected. *Ritacca v. Abbott Labs.*, 203 F.R.D. 332, 335-36 (N.D. Ill. 2001). Failing to produce such a log, the documents must be produced. *Breon v. Coca-Cola Bottling Co.*, 232 F.R.D. 49, 54-55 (D. Conn. 2005).

However, the case is far beyond the point of ruling on a simple discovery dispute. Instead, Plaintiffs seek extraordinary relief post-trial. A motion pursuant to Rule 60 is granted only under rare and unusual circumstances. *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1316 (11th Cir. 2000). To obtain relief under Rule 60(b)(2), Plaintiffs must establish (1) the evidence is newly discovered, post-trial; (2) they acted with due diligence to discover the evidence; (3) the evidence is material, not cumulative or impeaching; and (4) the evidence demonstrates that a new trial would probably produce a new result. *Id.*

Plaintiffs have not pointed to any newly discovered evidence in this case. Plaintiffs' counsel complain that they

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

did not receive the contracts between GDOT and Qore setting out their working relationship. However, as Qore notes, Douglas Asphalt possessed those contracts by July 28, 2005, at the latest. On that day, Plaintiffs' former counsel from Kilpatrick Stockton took the deposition of a Qore employee, Chris Arnold, in a related lawsuit, *Georgia Department of Transportation v. Douglas Asphalt Co.*, Superior Court of Fulton County, 2004-CV-83139. The contracts are marked as exhibits to Arnold's deposition.

Plaintiffs' current counsel reviewed Arnold's deposition, and concede that they received many boxes of evidence from Kilpatrick Stockton when that law firm withdrew from the representation, after Plaintiffs were unable to pay all of their legal bills. Plaintiffs' counsel claim that the file they received from Kilpatrick Stockton was disorganized and incomplete, and complain that Kilpatrick Stockton was uncommunicative after it withdrew from the case. Nonetheless, Plaintiff's attorneys were obliged to review and understand the evidence and files they received from Kilpatrick Stockton.

The Court understands that assimilating this information was a large undertaking, with reams of evidence and multiple, parallel proceedings. But the case also promised considerable

rewards if Plaintiffs prevailed, and Plaintiffs' counsel freely took on the case. Thus, Plaintiffs' lawyers were required to understand the facts they already had in their possession from Kilpatrick Stockton. "[E]vidence cannot be 'newly discovered' under Rule 60 if it is in the possession of the moving party or that party's attorney prior to the entry of judgment." *Taylor v. Texgas Corp.*, 831 F.2d 255, 259 (11th Cir. 1987).

Likewise, the Court rejects Plaintiffs' suggestion that they were unaware of Qore's ongoing testing from GDOT's outside counsel through 2006, and that they only learned of this fact during the *Evanston Insurance Co. v. Applied Technical Services, Inc.*, CV207-75 (S.D. Ga.), declaratory judgment trial that took place before Judge Alaimo in August 2009. GDOT's motion for a protective order and its accompanying privilege logs disclosed this fact. Indeed, Judge Alaimo's summary judgment order of February 13, 2009, notes that this testing occurred. (Doc. no. 179 at 8 n.2.)

In short, Plaintiffs failed to seek information related to this post-2004 testing after the Court dismissed GDOT's motion for a protective order, and after Qore filed its summary judgment motions. Where a party has knowledge of

17

evidence, but fails to discover the contents of that evidence, such conduct shows a lack of due diligence. *Cox v. O'Malley*, No. 96-1695, 1997 U.S. App. LEXIS 1514 at *3-*4 (1st Cir. Jan. 22, 1997).

Additionally, Plaintiffs have not shown that the evidence they rely on is material. Plaintiffs were aware of the post-2004 testing, but chose not to argue that this testing affected the running of the statute of limitations. (Doc. no. 189.) Now, a year later and after receiving a sizeable verdict against a co-Defendant, Plaintiffs will not be heard to complain, assert a new theory, or seek to raise additional arguments in opposition to Qore's motion for summary judgment.

As Qore notes, Plaintiffs' remedy for any violations of the discovery rules was to seek an order compelling appropriate discovery pursuant to Rule 37. Contrary to Plaintiffs' allegations, Qore did not hide any documents. Plaintiffs make this serious allegation of wrongdoing without any support in the record, and the Court does not condone Plaintiffs' attorneys' attempts to castigate Qore and its counsel for their own failures. To the extent Plaintiffs missed a chance to raise additional arguments to overcome Qore's motion for summary judgment, fault lies with Plaintiffs

for failing to exercise diligence in filing motions to compel in a timely fashion.[5]

The Court declines to modify the summary judgment orders entered by Judge Alaimo on February 13, 2009, and April 27, 2009, for the reasons set forth by Plaintiffs, pursuant to either Rule 54(b) or Rule 60(b) of the Federal Rules of Civil Procedure.

## CONCLUSION

For the reasons explained above, Defendants' motion for judgment as a matter of law is **DENIED**, and Plaintiffs' motion for reconsideration is **DENIED**. (Doc. nos. 279 & 299.) Plaintiffs' attorneys' request for fees and costs pursuant to a lien filed in this case is presently being contested as an adversary matter before the United States Bankruptcy Court for the Southern District of Georgia. (Case No. 09-51272-JSD,

---

[5] "Rule 60(b)(3) applies to misconduct in withholding information called for by discovery[.]" *Rozier*, 573 F.2d at 1339. In that case, the court granted relief under Rule 60 to the plaintiff because Ford withheld and suppressed a critical document in discovery. *Id.* at 1339-43. In contrast, Plaintiffs have not shown that Qore obtained summary judgment from fraud, misrepresentations, or misconduct, and Plaintiffs are not entitled to relief under Rule 60(b)(3). While Howard Allred was unprepared to answer several questions during his deposition, that does not constitute fraud, misrepresentation, or severe misconduct justifying relief under subsection (b)(3). Plaintiffs were obliged to take remedial action at that time, with the Court if necessary, not wait until the jury returned a verdict and then raise its complaints against Qore.

Doc. nos. 166 & 187.) Accordingly, Plaintiffs' motion for a hearing regarding the lien is **DISMISSED**. (Doc. no. 295.) Likewise, the motions to intervene filed by Arch Insurance Company, Fidelity and Deposit Company of Maryland, and Zurich American Insurance Company are **DISMISSED**; those motions sought intervention only as to the attorney lien matter. (CV206-229, Doc. nos. 301, 302 & 314 at 1.) Plaintiffs' motion for a hearing on their motion for reconsideration is **DENIED**. (Doc. no.313.)

**SO ORDERED**, this 20th day of May, 2010.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA