# UNITED STATES COURT OF APPEALS
## For the Eleventh Circuit

---

No. 10-12695

---

District Court Docket No.
2:06-cv-00229-JRH-JEG

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 20, 2011
JOHN LEY
CLERK

DOUGLAS ASPHALT CO.,
JOEL H. SPIVEY,
KYLE SPIVEY,

              Plaintiffs - Appellees,

versus

QORE, INC.,
et al.,

              Defendants,

APPLIED TECHNICAL SERVICES, INC.,

              Defendant - Appellant.



---

No. 10-12827

---

District Court Docket No.
2:06-cv-00229-JRH-JEG

DOUGLAS ASPHALT CO.,
JOEL H. SPIVEY,
KYLE SPIVEY,

              Plaintiffs - Appellants,

versus

QORE, INC.,
APPLIED TECHNICAL SERVICES, INC.,
GEORGENE M. GEARY,

DURRENCE GLENN,
GUOHUA LIAN,
a.k.a. George Lian,
et al.,
et al.,

        Defendants-Appellees.

---

Appeals from the United States District Court for the
Southern District of Georgia

---

## JUDGMENT

It is hereby ordered, adjudged, and decreed that the attached opinion included herein by
reference, is entered as the judgment of this Court.

Entered: September 20, 2011
For the Court: John Ley, Clerk of Court
By: Djuanna Clark

Issued as Mandate:
October 26, 2011

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

```
FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 20, 2011
JOHN LEY
CLERK
```

No. 10-12695

D.C. Docket No. 2:06-cv-00229-JRH-JEG

DOUGLAS ASPHALT CO.,
JOEL H. SPIVEY,
KYLE SPIVEY,

Plaintiffs-Appellees,

versus

QORE, INC.,
et al.,

Defendants,

APPLIED TECHNICAL SERVICES, INC.,

Defendant-Appellant.

No. 10-12827

D.C. Docket No. 2:06-cv-00229-JRH-JEG

DOUGLAS ASPHALT CO.,
JOEL H. SPIVEY,

KYLE SPIVEY,

Plaintiffs-Appellants,

versus

QORE, INC.,
APPLIED TECHNICAL SERVICES, INC.,
GEORGENE M. GEARY,
DURRENCE GLENN,
GUOHUA LIAN,
a.k.a. George Lian,
et al.,

Defendants-Appellees.

Appeals from the United States District Court
for the Southern District of Georgia

(September 20, 2011)

Before BARKETT, WILSON and ARNOLD,* Circuit Judges.

ARNOLD, Circuit Judge:

This consolidated appeal arises from a contract dispute between Douglas

Asphalt Company, including its principals Joel and Kyle Spivey, and the Georgia

Department of Transportation (GDOT).  GDOT awarded Douglas two paving

---

*Honorable Morris S. Arnold, Circuit Judge for the United States Court of Appeals for
the Eighth Circuit, sitting by designation.

2

contracts to mill and resurface certain stretches of interstate highway in Georgia. After the first project was completed, GDOT began noticing that the asphalt that Douglas had laid was showing excessive wear, which GDOT attributed to an insufficient amount of hydrated lime, an ingredient in the asphalt that reduces its susceptibility to moisture damage. GDOT therefore requested that Douglas remove and replace some of the asphalt, but Douglas refused, maintaining that the problems were caused by a faulty substructure that had been installed years before it had performed its work.

GDOT retained QORE, Inc., an engineering and materials testing company, to remove asphalt samples from the first project site and conduct tests to determine the samples' lime content. QORE performed three such tests: a "fizz test," a "color test," and a "tensile strength test," all of which GDOT employees developed. QORE retained, at GDOT's direction, Applied Technical Services, Inc. (ATS), to perform a fourth test that GDOT developed, called an atomic absorption test. QORE and ATS sent the data that those tests produced to GDOT for its analysis and consideration. GDOT concluded from those data that the asphalt that Douglas had laid did not contain enough hydrated lime; it then relied, in part, on

3

those test results to justify its decision to place Douglas in default on both highway contracts.

Douglas responded by filing this action against QORE, ATS, and several individual GDOT officials.  According to Douglas's complaint, as relevant here, none of the tests that QORE or ATS performed was capable of accurately quantifying the amount of hydrated lime in the asphalt samples; it also alleged that QORE, ATS, and the named GDOT officials were all aware of this before the completion of those tests.  Douglas asserted that by performing what it called fraudulent tests and enabling GDOT to rely upon them to declare it in default on both projects, the defendants had violated the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968.  The complaint also contained state-law claims for negligent misrepresentation, fraud, and defamation against QORE and ATS.

The district court dismissed the RICO, negligent misrepresentation, and fraud claims during pretrial proceedings.  After Douglas moved for reconsideration, the court concluded that the complaint had made out a claim for simple negligence against QORE and ATS, even though Douglas had not used the

4

title "negligence" for any count in the complaint. The court later granted summary

judgment for QORE on this new-found claim and on Douglas's claim for

defamation; ATS failed to move for summary judgment on the negligence claim,

though, and the court denied it summary judgment as to the defamation claim.

Douglas therefore proceeded to trial against ATS on the two state-law tort claims,

and, after a five-day trial, a jury returned a general verdict of $150 million in

Douglas's favor.

Both Douglas and ATS appealed. Douglas contends that the district court

erred by dismissing its RICO claims and by granting summary judgment for

QORE on its claims for defamation and negligence. ATS maintains that the court

erroneously failed to grant its motions for judgment as a matter of law on both the

defamation and negligence claims, *see* Fed. R. Civ. P. 50(a), (b). Because we hold

that the district court did not err in dismissing Douglas's RICO claims, and that

QORE and ATS were entitled to judgment as a matter of law on both the

defamation and negligence claims, we affirm in part, reverse in part, vacate the

judgment against ATS, and remand for entry of judgment in favor of ATS.

I

5

Douglas Asphalt first contends that the district court erroneously dismissed its RICO claims against all the defendants. We disagree.

In addition to making certain activities criminal, *see* 18 U.S.C. § 1962, RICO provides that any "person injured in his business or property by reason of a violation" of § 1962 may bring a civil action for damages in federal district court, 18 U.S.C. § 1964(c). Douglas claimed that the defendants violated subsection 1962(c), which prohibits a person associated with "an enterprise" from participating, "directly or indirectly," in the enterprise's affairs "through a pattern of racketeering activity." "Racketeering activity" includes, among other so-called predicate acts, the acts "indictable" under the mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343, on which Douglas predicated its claims. 18 U.S.C. § 1961(1)(B). To make out a "pattern" of racketeering, Douglas had to plead at least two related acts of mail or wire fraud, *see* 18 U.S.C. §§ 1961(5), and – with respect to each such act – to allege with particularity the defendants' intentional participation in a "scheme ... to defraud [Douglas] of money or property" and their use of either the mails or wires to execute the scheme, *United States v. Ward*, 486 F.3d 1212, 1222 (11th Cir. 2007); Fed. R. Civ. P. 9(b); *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010).

6

QORE and ATS moved to dismiss all claims except the one for defamation for failure to state a claim, *see* Fed. R. Civ. P. 12(b)(6), and the individual GDOT defendants sought judgment on the pleadings, *see* Fed. R. Civ. P. 12(c). The district court dismissed Douglas's RICO claims predicated on mail and wire fraud because Douglas had not pleaded that it relied on the defendants' misrepresentations. The parties agree that in doing so the court correctly applied the law that existed at the time: We had held that by providing a civil claim to persons injured "by reason of" a RICO violation under § 1964(c), Congress gave standing only to persons whose injuries "flowed directly" from a RICO violation, and that therefore only persons who had detrimentally relied on the defendants' misrepresentations could succeed on a RICO claim based on mail or wire fraud. *See Pelletier v. Zweifel*, 921 F.2d 1465, 1499-1500 (11th Cir.1991); *Byrne v. Nezhat*, 261 F.3d 1076, 1110 (11th Cir. 2001); *see also Andrews v. Am. Tel. & Tel. Co.*, 95 F.3d 1014, 1025 (11th Cir.1996). Here Douglas admittedly did not plead that it relied on any of the defendants' alleged misrepresentations about the lack of lime in the asphalt and, in fact, alleged that when accused of not adding enough lime, Douglas had told GDOT that the road damage had nothing to do with the asphalt's composition.

7

But ten months after the district court's ruling, the Supreme Court held to the contrary, resolving a split in the circuits and rejecting our interpretation of the statute. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 128 S. Ct. 2131, 170 L.Ed.2d 1012 (2008). The Court held that plaintiffs who had not themselves relied on the misrepresentations could bring a civil RICO claim based on mail or wire fraud. Although the district court did not enter a final judgment in the present case until nearly two years after *Bridge* was decided, Douglas did nothing during that time to bring that Supreme Court decision to the court's attention. Had Douglas done so, by motion for reconsideration or otherwise, the court plainly could have revisited the issue: "Every order short of a final decree is subject to reopening at the discretion of the district judge." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12, 103 S. Ct. 927, 74 L. Ed.2d 765 (1983); *see* Fed. R. Civ. P. 54(b). We note also that many cases recognize that a change in controlling law is one of the core reasons for filing and granting a motion for reconsideration. *See e.g., Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003); *Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 615 F. Supp. 2d 575, 578 (E.D. Ky. 2009); *Applera Corp. v. MJ Research, Inc.*, 297 F. Supp. 2d 453, 455 (D. Conn. 2004); *cf. North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir.

8

1995). The case proceeded without the RICO claims; the parties filed additional

motions and completed discovery; and the court conducted a trial on the remaining

claims and entered final judgment. Douglas now argues for the first time on

appeal that its RICO claims should be reinstated based on *Bridge*. We do not

consider Douglas's argument because it comes too late.

It is well settled that issues not raised in the district court in the first

instance are forfeited. *See F.D.I.C. v. Verex Assur., Inc.*, 3 F.3d 391, 395 (11th

Cir. 1993). Though we have not addressed these particular circumstances – a

change in controlling law after the district court disposes of a claim – we see no

reason not to apply that principle here. We find strong support for our conclusion

in a Federal Circuit case that holds "that when there is a relevant change in the law

before entry of final judgment, a party generally must notify the district court; if

the party fails to do so, it waives arguments on appeal that are based on that

change in the law." *Rentrop v. Spectranetics Corp.*, 550 F.3d 1112, 1117 (Fed.

Cir. 2008).

In *Rentrop*, the appellant challenged a jury instruction on appeal by relying

on a Supreme Court case that was decided while post-trial motions were pending

in the district court and almost four months before the entry of final judgment. The Federal Circuit determined that the appellant had had "ample time" during the four months to bring the new case to the district court's attention and had waived its right to rely on the case by failing to do so. The court asserted that the district court could not be found to have "overlooked" an argument that had not been presented to it, concluding that "this court does not 'review' that which was not presented to the district court." *Id.* The court also noted that efficiency could have been served by raising the issue earlier: "the trial court – if it agreed ... could have taken appropriate action and possibly obviated the need for this appeal." *Id.*

Here the district court did not even arguably "overlook" an argument because the *Bridge* opinion did not exist when it dismissed the RICO claims; as we have said, it correctly applied the law at the time. And Douglas had almost two years, not four, to tell the district court about the case. Also, the law changed more than fifteen months before trial, which, we believe, made it all the more important that the district court be notified: If the *Bridge* decision meant that the RICO claims in Douglas's complaint were viable – and we express no opinion on that matter – the parties could have conducted discovery on those claims and the court could have tried them along with the others, thereby obviating the possibility

10

of an additional trial, with its significant costs in money, effort, and time.  We conclude that Douglas, by failing to ask the district court to reconsider its ruling based on a holding in *Bridge,* has forfeited its right to rely on that argument, and so we uphold the court's dismissal of Douglas's claims under §1962(c) of RICO.

Douglas's complaint also included a RICO claim based on subsection 1962(d), which makes it "unlawful for any person to conspire to violate" RICO's criminal prohibitions.  We agree with the district court that the plaintiffs failed to state a claim based on RICO's conspiracy provision.  The Supreme Court has held that persons have no standing to bring a civil RICO claim unless their injuries resulted from violation of a substantive provision of RICO.  *Beck v. Prupis,* 529 U.S. 494, 505, 120 S. Ct. 1608, 146 L.Ed.2d 561 (2000); *see* 18 U.S.C. § 1964(c).  Since we have already upheld the district court's dismissal of the RICO claims based on § 1962(c), the only substantive RICO provision that Douglas relies on, Douglas cannot prevail on a conspiracy claim.

II.

11

Douglas also contends that the district court erred when it granted summary judgment to QORE on its defamation claim. ATS maintains relatedly that the court erred by denying its Rule 50 motions on the same claim.

In its complaint, Douglas asserted that both QORE and ATS "falsely publicized and published" to third parties that Douglas had improperly formulated the asphalt that was used in the first project; it is undisputed that the test results that QORE and ATS provided to GDOT form the sole basis for this claim. According to Douglas's complaint, QORE and ATS's publication of those "false and misleading" test results constituted "slander and/or libel per se." Douglas also maintained that the test results placed "[it] and its officers, directors, and employees in a false light by attributing to them certain acts and omissions that are highly offensive."

The district court granted summary judgment for QORE on this claim on the ground that Douglas had failed to file its complaint within the applicable statute of limitations. We review the grant of summary judgment *de novo*, *Galvez v. Bruce*, 552 F.3d 1238, 1241 (11th Cir.2008), and will affirm if the evidence, "viewed in the light most favorable to the nonmoving party, presents no genuine issue of fact

and compels judgment as a matter of law." *Swisher Int'l, Inc. v. Schafer*, 550 F.3d 1046, 1050 (11th Cir. 2008), *cert. denied*, 130 S. Ct. 71, 175 L. Ed.2d 233 (2009); *see* Fed. R. Civ. P. 56(a).

Georgia law defines libel as a "false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule." Ga. Code Ann. § 51-5-1(a). By the very terms of its statutory definition, then, the basis for a claim of libel in Georgia is an injury that has been done to the reputation of another. *See Ajouelo v. Auto-Soler Co.*, 61 Ga. App. 216, 221, 6 S.E.2d 415, 418-19 (1939). Georgia law is also clear that the statute of limitations for "injuries to the reputation" must be filed within one year after the right of action accrues or it is time-barred. *See* Ga. Code Ann. § 9-3-33. A claim for libel arises when the defamatory statement is published, *see Deal v. Builders Transp.*, 192 Ga. App. 511, 511, 385 S.E.2d 293, 293-94 (1989); *see also* Ga. Code Ann. § 51-5-1(b), namely "as soon as it is communicated to any person other than the party libeled." Ga. Code Ann. § 51-5-3. There is no dispute that QORE transmitted the last of the test results that it provided to GDOT on November 22, 2004, and so Douglas had

13

one year from that date to file its claim. It did not file its complaint until October 10, 2006, almost a year too late.

Douglas argues that its claim is nonetheless viable because it is really one for "injurious falsehood," not defamation, and thus the one-year statute of limitations does not apply. A claim for injurious falsehood involves the publication of a false statement that is "harmful to the interests" of others and results in their "pecuniary loss." Restatement (Second) of Torts § 623A (1977). The tort occurs when a false statement disparages another's property in "land, chattels or intangible things or of their quality," *id.* at cmt. (a), or when a false statement "reflects merely upon the quality of what the plaintiff has to sell or solely on the character of his business," *id.* at cmt. (g); *see also Georgia Soc'y of Plastic Surgeons, Inc. v. Anderson*, 257 Ga. 710, 714, 363 S.E.2d 140, 144 (1987) [(per curiam)] (citing same). The fundamental difference between a claim for defamation and one for injurious falsehood, then, is that the former protects the reputation of an injured party while the latter protects the party's property interests. This distinction is important in Georgia because actions involving "injuries to personalty" (as opposed to injuries to reputation) must be brought within four years (not one year) after the right of action accrues. *Compare* Ga. Code Ann. § 9-

14

3-31, *with* § 9-3-33; *see also Hill v. Crabb*, 166 Ga. App. 387, 387-88, 304 S.E.2d 510, 511 (1983).

In *Anderson*, 257 Ga. at 714, 363 S.E.2d at 143-44, the Georgia Supreme Court explicitly refused to decide whether a cause of action for injurious falsehood (also called "trade libel") lies in Georgia, and no Georgia court has since held that such a cause of action exists. *See Davita Inc. v. Nephrology Associates, P.C.*, 253 F. Supp. 2d 1370, 1374-75 (S.D. Ga. 2003). In the absence of such a recognition, federal courts have been extremely reluctant to allow claims for injurious falsehood to proceed under Georgia law. *See id.*; *Carolina Indus. Prods., Inc. v. Learjet, Inc.*, 189 F. Supp. 2d 1147, 1167-68 (D. Kan. 2001); *U.S. Faucets, Inc. v. Home Depot U.S.A. Inc.*, No. 1:03-CV-1572, 2006 WL 1518887, at *5-*6 (N.D. Ga. May 31, 2006). The district court expressed a similar reservation when it refused to recharacterize Douglas's claim for defamation as one for injurious falsehood, and we see no error in that holding: It is not the function of federal courts to expand state tort doctrine in novel directions absent state authority suggesting the propriety of doing so. *See City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 421 (3d Cir. 2002); *cf. Carter v. Glenn*, 243 Ga. App. 544, 549-50, 533 S.E.2d 109, 115 (2000).

15

We also agree with the district court that even if such a tort exists under Georgia law, there is nothing in Douglas's complaint to indicate that it was making – or even attempting to make – that kind of claim. Douglas titled the relevant count "Defamation/False Light" and never used the phrase "injurious falsehood" or any other similar words in its complaint. Rather, it unambiguously stated that the publication of the collection of disputed test results "constitute[d] slander and/or libel per se." It also asserted that the defendants' conduct "placed [Douglas] and its officers, directors, and employees in a false light" that was "highly offensive," clearly indicating an intention to remedy injuries done to the plaintiffs' reputations. And insofar as Douglas attempted to plead false-light invasion of privacy – a claim that provides a remedy for publicity depicting a plaintiff in a false light that a reasonable person would find highly offensive, *Smith v. Stewart*, 291 Ga. App. 86, 100, 660 S.E.2d 822, 834 (Ga.App. 2008) – that claim too must be brought within a year. *Torrance v. Morris Pub. Group LLC*, 281 Ga. App. 563, 566, 636 S.E.2d 740, 743 (Ga. App. 2006). Thus, the only apparent claims in this count were for "injuries to the reputation," which the district court correctly ruled were barred by the applicable statute of limitations.

16

Ga. Code Ann. § 9-3-33. It therefore did not err when it granted summary judgment for QORE.

ATS, on the other hand, was not entitled to a similar ruling because it failed to raise the statute of limitations as an affirmative defense. It contends instead that the district court erred when it denied its motions for judgment as a matter of law, *see* Fed. R. Civ. P. 50(a), (b), in which ATS argued, among other things, that Douglas had failed to prove some essential elements of its defamation claim. We review the court's denial of these motions *de novo*, viewing the evidence in a light most favorable to Douglas as the non-moving party. *U.S. Steel, LLC v. Tieco, Inc.*, 261 F.3d 1275, 1288 (11th Cir. 2001). The court should have granted judgment as a matter of law to ATS if Douglas failed to present a "sufficient evidentiary basis for a reasonable jury to find for [it] on a material element" of its claim. *Howard v. Walgreen Co.*, 605 F.3d 1239, 1242 (11th Cir. 2010).

Because it disposes of the case, we focus on ATS's argument that Douglas failed to prove an essential element of that claim, namely that ATS made any statements that were false. In its complaint, Douglas asserted that the test results that ATS provided to GDOT were "false and misleading" because they did not

17

accurately reflect the lime content of the asphalt samples. But ATS contends that the reports merely conveyed information that it recorded according to procedures that GDOT established and there was no libel because the test results truthfully reported those data. The district court rejected this argument, concluding that there was sufficient evidence for a reasonable jury to find that ATS published false test reports. We disagree.

Under Georgia law, a "libel is a *false* defamation of another and if what is printed is true there is no libel." *Savannah News-Press, Inc. v. Harley*, 100 Ga. App. 387, 111 S.E.2d 259, 261 (1959) (internal citation omitted); *see also* Ga. Code Ann. § 51-5-1(a). A cause of action for libel will therefore fail if the statements at issue are shown to be truthful. *McCall v. Couture*, 293 Ga. App. 305, 307, 666 S.E.2d 637, 639-40 (2008); *see also* Ga. Code Ann. § 51-5-6. "[T]ruthfulness is normally a question of fact for the jury," *Kersey v. U.S. Shoe Corp.*, 211 Ga. App. 655, 657, 440 S.E.2d 250, 252 (1994); but where "undisputed evidence of record shows that no genuine issue of material fact remains as to [the] truth of the allegedly defamatory communications," the question of whether the "communications were true and would, therefore, afford ... no basis for a recovery" is one of law for the court to decide. *See Yandle v. Mitchell Motors, Inc.*, 199 Ga.

18

App. 211, 211, 404 S.E.2d 313, 315 (1991); *cf. Jim Walter Homes v. Strickland*,
185 Ga. App. 306, 309, 363 S.E.2d 834, 836 (1987). We conclude that no
reasonable jury could find that ATS's test results were false.

We find it noteworthy, for instance, that GDOT developed the methodology
and procedures that ATS used when it generated the atomic absorption test results.
GDOT officials also personally observed ATS's chemists and technicians when
they performed the initial atomic absorption testing to ensure that they followed
GDOT's step-by-step instructions. When ATS provided GDOT with the results of
those tests for its analysis and consideration, then, there can be no doubt that the
GDOT officials who received them understood their meaning, particularly that
they were raw data that ATS had generated by conducting the atomic absorption
tests in strict compliance with GDOT's instructions and specifications. Nowhere
in the test reports did ATS indicate that their numbers represented anything
besides this; to the contrary, ATS explicitly stated on the cover page of each of the
reports that the testing had been done "per GA DOT ... method as a guideline."

ATS does not dispute Douglas's contention that the atomic absorption
testing reports did not reflect the actual hydrated lime content of the asphalt

19

samples. But ATS never represented to GDOT, or to anyone else, that its reports did so, and, moreover, ATS alerted GDOT early in the testing process that its procedure might produce inexact or uncertain results. Specifically, Dr. Zuomin "Sue" Zahang, a chemist at ATS, contacted GDOT in late 2003 after she began noticing discrepancies in the results from the atomic absorption tests; she expressed her concern about GDOT's testing procedure and suggested that adding lanthanum during the process might provide a fix. GDOT declined to change the procedure, however, and it instructed Dr. Zahang to continue with the atomic absorption testing exactly as originally specified. We conclude that ATS's test reports were unambiguously not false and thus not libelous. Accordingly, Douglas failed to present a "sufficient evidentiary basis for a reasonable jury" to find in its favor on the defamation claim, and the district court erred in denying ATS's motions for judgment as a matter of law. *Howard*, 605 F.3d at 1242.


                                   III.

        Douglas contends finally that the district court erred by granting QORE summary judgment on its claim for negligence. As we have said, that claim was not specifically adverted to by name in the complaint, but the district court concluded that Douglas had nevertheless made sufficient allegations to make out

                                    20

such a claim. In particular, Douglas asserted that QORE and ATS "negligently developed and/or utilized the fizz, color, tensile, and [atomic absorption] tests to purportedly determine the amount of hydrated lime contained in the asphalt used for the I-95 project." It maintained that they "should have known that [the] tests were inaccurate and provided unreliable results," and thus were jointly and severally liable for any harm that Douglas suffered when they provided them to GDOT without any appropriate warnings to qualify them.

The district court granted QORE summary judgment on this claim after it concluded that QORE "did not have any independent duty to Douglas to decide, or opine about, the usefulness of the tests in performing services for its client, GDOT, under contract." ATS failed to file a similar motion, but it adopted the same legal theory in its motions for judgment as a matter of law, *see* Fed. R. Civ. P. 50(a), (b). The district court denied those motions, however, specifically rejecting the argument that "there was no duty in this case." It ruled instead that ATS had owed Douglas "a duty to exercise reasonable care in its conduct and activities," and it distinguished ATS's conduct from QORE's in that "the atomic absorption tests performed by ATS purported to reveal a specific lime content in the various road samples, which was critical in GDOT's decision to find Douglas

21

in default for not putting enough lime into the asphalt mixture that it placed on" the relevant interstate highways. The court also found that "GDOT expected ATS to devise its own method for evaluating the road samples."

ATS contends that the district court erred when it came to those conclusions and denied its motions for judgment as a matter of law; in doing so, it relies on arguments virtually identical to those that QORE advances in opposition to Douglas's appeal on the same claim. So we address these arguments together, reviewing *de novo* both the court's grant of summary judgment to QORE and its denial of judgment as a matter of law to ATS. *See Swisher Int'l*, 550 F.3d at 1050; *U.S. Steel*, 261 F.3d at 1288.

"The threshold issue in any cause of action for negligence is whether, and to what extent, the defendant owes the plaintiff a duty of care." *City of Rome v. Jordan*, 263 Ga. 26, 426 S.E.2d 861, 862 (1993). QORE and ATS concede that they each owed GDOT certain duties as a result of their contracts, but they argue that any such duties did not extend to Douglas, and, moreover, that Georgia's privity rule prohibits Douglas from basing a negligence claim on a breach of those duties. As codified in Ga. Code Ann. § 51-1-11(a), Georgia's privity rule

22

provides, in relevant part, that "if [a] tort results from the violation of a duty which is itself the consequence of a contract, the right of action is confined to the parties and those in privity to that contract, except in cases where the party would have a right of action for the injury done independently of the contract." Douglas does not dispute that it was not in privity with either QORE or ATS; so to avoid the restrictions that Ga. Code Ann. § 51-1-11(a) imposes, Douglas's claim must arise "independently" of the GDOT contracts.

Douglas contends that QORE and ATS owed it a duty that existed "independently" of their respective contracts with GDOT "by virtue of the fact" that QORE and ATS were "professionals," and because it was "foreseeable" that the "unqualified and inaccurate test results" they produced would cause it harm. To support these arguments, Douglas relies principally on *Bradley v. Wessner*, 250 Ga. 199, 296 S.E.2d 693 (1982). But we think *Wessner* is both factually and legally inapposite.

In *Wessner*, a private mental health hospital released a patient on an unrestricted weekend pass despite its legal authority to keep him confined and its knowledge that he was likely to cause bodily harm to his wife. *Id.*, 250 Ga. at 200,

23

296 S.E.2d at 694. When the patient obtained a gun and shot and killed his wife

and her paramour, the wife's family brought a wrongful death action against the

hospital on the theory that the patient's "criminal act was reasonably foreseeable"

and that the hospital's "negligence in issuing the weekend pass and in failing to

exercise proper control" over the patient proximately caused the wife's death. *Id.*

The issue on appeal was whether a physician can owe a duty of care to a party

with whom he or she has no privity. The Georgia Supreme Court held in the

affirmative, concluding that "[o]ne who takes charge of a third person whom he

knows or should know to be likely to cause bodily harm to others if not controlled

is under a duty to exercise reasonable care to control the third person to prevent

him from doing such harm." *Id.* at 201-02 (citing Restatement (Second) of Torts

§ 319 (1977)). This holding represented an exception to the general proposition

that "there is no duty to control the conduct of third persons to prevent them from

causing physical harm to others"; the court concluded that there was liability

because of the "special relationship" that existed between the physician and the

patient and because the physician exercised "control" over the patient. *See id.* at

201-02.

24

Douglas contends that a similar duty arose here because QORE and ATS had means of controlling "the manner in which [their] testing procedures were communicated." It argues that the two companies could have chosen not to perform the tests for GDOT, or could at least have qualified their results. But subsequent decisions interpreting and applying *Wessner* have made it clear that the "control" that gave rise to the duty in that case was the "legal authority" to restrain a person's liberty. *See Ermutlu v. McCorkle*, 203 Ga. App. 335, 337, 416 S.E.2d 792, 794-95 (1992); *accord Baldwin v. Hosp. Auth. of Fulton County*, 191 Ga. App. 787, 789, 383 S.E.2d 154, 156-57 (1989); *Keppler v. Brunson*, 205 Ga. App. 32, 33, 421 S.E.2d 306, 307 (1992); *Trammel v. Bradberry*, 256 Ga. App. 412, 416-17, 568 S.E.2d 715, 721 (2002); *Houston v. Bedgood*, 263 Ga. App. 139, 142, 588 S.E.2d 437, 440 (2004). Neither QORE nor ATS had that kind of control over GDOT, though, and thus they were under no duty to do anything to control GDOT's use of the test results and "prevent [it] from causing [Douglas] harm." *See Wessner*, 250 Ga. at 201-02, 296 S.E.2d at 695-96.

Georgia courts, moreover, have assiduously resisted efforts to extend *Wessner*'s holding to circumstances like the present ones. When faced with a claim for economic losses (as opposed to physical harm or property damage) that

25

resulted from negligently preparing or furnishing of false information, Georgia

courts have held that *Wessner* is both "factually distinguishable and not

controlling," *see Rogers v. Coronet Insurance Co.*, 206 Ga. App. 46, 50, 424

S.E.2d 338, 343 (1992), and that liability must arise, if at all, under the

Restatement (Second) of Torts, § 522 (1977), which the Georgia Supreme Court

adopted in *Robert & Co. v. Rhodes-Haverty P'ship*, 250 Ga. 680, 681, 300 S.E.2d

503, 504 (1983). *See Rogers*, 206 Ga. App. at 50, 424 S.E.2d at 343 (citing

*Badische Corp. v. Caylor*, 257 Ga. 131, 133, 356 S.E.2d 198, 200 (1987)); *accord*

*Driebe v. Cox*, 203 Ga. App. 8, 10-11, 416 S.E.2d 314, 3315-16 (1992) (citing

same). "Under this standard, one who supplies information during the course of

his business, profession, employment, or in any transaction in which he has a

pecuniary interest has a duty of reasonable care and competence to parties who

rely upon the information in circumstances in which the maker was manifestly

aware of the use to which the information was to be put and intended that it be so

used." *Robert & Co.*, 250 Ga. at 681, 300 S.E.2d at 504. But, crucially, such a

duty extends only "to those persons, or the limited class of persons who the

professional is actually aware will rely upon the information he prepared," and

thus "professional liability for negligence" of this kind does not extend "to an

unlimited class of persons whose presence is merely 'foreseeable.' " *Badische*

*Corp.*, 257 Ga. at 131, 356 S.E.2d at 200.  This is true whether the claim is

couched in terms of negligent misrepresentation, negligence, *see id.*, professional

negligence, *see Hardage v. Lewis*, 199 Ga. App. 632, 632-33, 405 S.E.2d 732, 733

(1991), or professional malpractice, *see White v. BDO Seidman, LLP*, 249 Ga.

App. 668, 670-72, 549 S.E.2d 490, 492-94 (2001).

Douglas asserted a claim for negligent misrepresentation in this case, but

the district court dismissed it because Douglas had failed to show that it actually

relied on any representations that either QORE or ATS made.  Having not

appealed that ruling, Douglas now attempts to resuscitate the claim by contending

that it was "foreseeable" that GDOT would rely upon QORE's and ATS's

"unqualified and inaccurate test results to the detriment of [Douglas]."  As the

district court correctly observed, however, it is Douglas's reliance on the test

results, not GDOT's, that is necessary to form the basis for this type of claim.

And, in any event, the Georgia Supreme Court has "specifically rejected" the sort

of foreseeability argument that Douglas attempts to make, *see Badische*, 257 Ga.

at 131, 356 S.E.2d at 200.  Nor does it make any difference that QORE and ATS

were "professionals": The limitations set forth in *Badische* originated in the

context of a "professional" accounting firm, *see id.*, 257 Ga. at 131-33, 356 S.E.2d

27

at 199-200, and in later cases Georgia courts have applied them equally to other types of professional organizations. *See, e.g., Talton*, 276 Ga. App. at 21, 622 S.E.2d at 590.

Thus the district court did not err when it granted summary judgment for QORE and held that QORE owed no duty of care to Douglas. As the court observed, QORE "is not obligated to perform tests for clients that only show results with 100% certainty, on pain of liability to the outside world if it fails to do so," and furthermore, "QORE is not responsible for the manner in which GDOT used the test results" here. The same principle requires a holding that ATS is not liable in the present circumstances. We therefore conclude that Douglas did not provide a legally sufficient basis for finding for Douglas on its claim for simple negligence. *Howard v. Walgreen Co.*, 605 F.3d 1239, 1242 (11th Cir. 2010).

## IV.

For the forgoing reasons, we **AFFIRM** the district court's dismissal of Douglas's RICO claims and its grant of summary judgment for QORE on Douglas's claims for defamation and simple negligence. We **REVERSE** its denials of ATS's motions for judgment as a matter of law, however, and thus **VACATE** the judgment

28

against ATS and **REMAND** to the district court for entry of a judgment in favor of

ATS.

A True Copy
Attested:
Clerk, U.S. Court of Appeals, Eleventh Circuit

By: _Spradlin_____ Date: 10/26/11
　　　　Deputy Clerk
Atlanta, Ga.

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

John Ley
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

October 26, 2011

Scott L. Poff
United States District Court
801 GLOUCESTER ST STE 220
BRUNSWICK, GA 31520

Appeal Number: 10-12695-BB
Case Style: Douglas Asphalt Co., et al v. Applied Technical Services
District Court Docket No: 2:06-cv-00229-JRH-JEG

The enclosed certified copy of the judgment and a copy of this court's opinion are hereby
issued as the mandate of this court.

The clerk of the court or agency shown above is requested to acknowledge receipt on the copy
of this letter enclosed to the clerk.

A copy of this letter, and the judgment form if noted above, but not a copy of the court's
decision, is also being mailed to counsel and pro se parties. A copy of the court's decision was
previously mailed to counsel and pro se parties on the date it was issued.

Sincerely,

JOHN LEY, Clerk of Court

Reply to: Janet K. Spradlin
Phone #: (404) 335-6178

Enclosure(s)

MDT-1 Letter Issuing Mandate

**10-12695**

Scott L. Poff
United States District Court
801 GLOUCESTER ST STE 220
BRUNSWICK, GA 31520